NO.   95-338

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE MARRIAGE OF

DAVID F. STUFFT,

     Petitioner and Appellant,

  and

MAYLA S. STUFFT,

     Respondent and Respondent

FILED

MAY 14 1996

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.


COUNSEL OF RECORD:

       For Appellant:

            Don A. LaBar, Church, Harris, Johnson
            & Williams, Great Falls, Montana

            David F. Stufft, Attorney at Law,
            Cut Bank, Montana

       For Respondent:

            C. W. Leaphart, Jr., The Leaphart Law Firm,
            Helena, Montana


                    Submitted on Briefs:   March 28, 1996

                          Decided:   May 14, 1996

Filed:

_____
       Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

This is an appeal from a decision of the Eighth **Judicial** District Court, Cascade County, in its award of child support and maintenance in favor of Mayla Stufft and its division of the marital estate. We affirm in part, reverse in part, and remand for further findings consistent with this opinion.

We restate the issues as follows:

1. Did the District Court err in adopting the proposed findings of fact and conclusions of law of one party practically verbatim?

2. Did the District Court err in its award of child support?

3. Did the District Court err in its distribution of the marital estate?

4. Did the District Court err in awarding maintenance to Mayla?

FACTS

David and Mayla Stufft were married in 1971. Three children were born of the marriage and at the time of the appeal they were 21, 15, and 13 years of age. In I977 David graduated from law school and the family moved to Cut Bank. David has a law practice and up until the time of the divorce worked as a part-time manager on his family farm (Stufft Farm). Mayla worked as a teacher in the Cut Bank school system from 1978 to 1993 except for six years when she took time off to be with the children.

Mayla and the two minor children moved to Fresno, California, in August 1993. She is seeking employment in the Fresno school system. David remains in Cut Bank. David and Mayla agreed to share custody of the minor children with Mayla having primary physical custody and David having reasonable rights of visitation.

The District Court valued the assets and distributed them in such a manner that both parties received approximately $185,000 with Mayla receiving the family home. David was assigned a large portion of the debt, although the $70,000 mortgage was ordered to be paid from the sale of the family home. The court awarded $739 per month per child as child support for the two minor children. The court also awarded $2,000 per month as maintenance to Mayla for a period of two years or until she becomes employed by the school system, whichever occurs first. From the court's value and division of marital property and its award of child support and maintenance, David appeals.

ISSUE 1

Did the District Court err in adopting the proposed findings of fact and conclusions of law of one party practically verbatim?

David contends that it was inappropriate for the court to have adopted Mayla's proposed findings and conclusions verbatim. We have held that adoption of a party's proposed findings and conclusions is not in itself grounds for reversal. In re Marriage of Purdy (1988), 234 Mont. 502, 764 P.2d 857.

> [I]t is not error for a court to adopt a party's proposed
> findings and conclusions if they are sufficiently

3

comprehensive and pertinent to the issues to provide a basis for the decision and are supported by the evidence.

Purdv, 764 P.2d at 858 (citing In re Marriage of Jacobson (1987), 228 Mont. 458, 743 P.2d 1025).

Proposed findings of fact and conclusions of law adopted by the district court are the court's own findings and conclusions and shall be reviewed the same--for clear error of fact and correctness of law. See Daines v. Knight (1995), 269 Mont. 320, 324, 888 P.2d 904, 906; and Kreger v. Francis (1995), 271 Mont. 444, 447, 898 P.2d 672, 674. In this case, the court's findings and conclusions were sufficiently comprehensive and pertinent to the issues and we will not reverse the court's decision on that basis so long as the evidence and the law supports those findings and conclusions.

ISSUE 2

Did the District Court err in its award of child support?

The District Court ordered David to pay Mayla the sum of $739 per month per child for the care, support, and maintenance of the parties' minor children. We review a district court's award of child support to determine whether the district court abused its discretion. In re Marriage of Craib (1994), 266 Mont. 483, 490, 880 P.2d 1379, 1384. We have said, "a district court must apply its discretion in a realistic manner, taking into account the actual situation of the parties." In re Marriage of Noel (1994), 265 Mont. 249, 252, 875 P.2d 358, 359.

In calculating child support payments, § 40-4-204(3)(a), MCA, provides that:

4

Whenever a court issues or modifies an order concerning child support, the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines . . . The guidelines must be used in all cases . . . The amount determined under the guidelines is presumed to be an adequate and reasonable support award, unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or is inappropriate in that particular case.

Both parties submitted financial affidavits purporting their incomes, assets, and expenses. David also submitted a child support determination worksheet by which he calculated what he considered to be appropriate child support figures. According to his calculations, David's support obligation was a negative amount (-$276 per child) while Mayla was obligated to contribute $221 per child. Mayla did not submit a child support determination worksheet but asserts that in utilizing the child support guidelines David is obligated to pay support in the amount of $739 per child.

In the District Court's findings and conclusions, it stated that it considered and complied with the Social and Rehabilitative Services Guidelines in arriving at its child support award of $739 per child per month. A district court, however, is required to make specific findings in writing as to how it calculated its award of child support under the guidelines and any deviation therefrom. In re Marriage of Brandon (1995), 271 Mont. 149, 152, 894 P.2d 951, 953. In this instance, the court did not identify the specifics of its calculation but merely alluded to the use of the guidelines.

5

In fact, the record is unclear as to how the District Court either complied with or deviated from the child support guidelines.

Working backwards on the child support determination worksheet, David argues he would have to earn $126,000 per year to be obligated for support payments of $739 per child per month. In any event, there is insufficient evidence to support the court's award of child support given that the court has provided no means to evaluate and compare its calculations with those required under the guidelines. We therefore conclude the District Court abused its discretion in its award of child support and we remand this issue to the District Court for its calculation of child support pursuant to the Montana Child Support Guidelines.

ISSUE 3

Did the District Court err in its distribution of the marital estate?

We review the findings underlying a district court's division of marital property to determine if the findings are clearly erroneous. In re Marriage of Rock (1993), 257 Mont. 476, 479-80, 850 P.2d 296, 298. We determine a finding is clearly erroneous by using the three-part test set forth in Interstate Production Credit Association v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. The DeSave test requires a review of the record to determine whether the findings are supported by substantial evidence; to determine whether the district court misapprehended the evidence; and finally, to determine whether a review of the record leaves

6

this Court with a firm conviction that a mistake has been made. The court's distribution of marital property is a discretionary judgment which is "presumed to be correct and will not be disturbed on appeal absent an abuse of discretion." *Marriage of Rock*, 850 P.2d at 298.

Section 40-4-202(1), MCA, provides in part that:

[T]he court . . . shall . . finally equitably apportion between the parties the property and assets belonging to either or both . . . . The court shall also consider the contribution or dissipation of value of the respective estates and the contribution of a spouse as a homemaker or to the family unit.

The District Court distributed $184,000 in assets to David and $185,000 in assets to Mayla. As part of this distribution, David received the assets of the Stufft Law Firm which the court valued at $75,000, and 20 shares of Stufft Farm stock valued at $20,000. Mayla received the family home with a value of $128,200. The court assigned $5,467 in debt to Mayla and $182,000 in debt to David.

David contends that the assets he received were overvalued and as a result the court's distribution was inequitable. David claims the market value of his law firm was actually $6,500, the value of the equipment given the fact that accounts receivable equaled accounts payable. Mayla asserts that the law business had value, not only by virtue of the purchase price, but also from the testimony of Mayla's expert witness relative to the good will of the law firm and its average annual reported revenue. However, the purchase price to which Mayla refers is the amount David and a former partner, Moore, borrowed to purchase a third partner's

7

(Frisbee) interest in the law firm of Frisbee and Moore. In 1991 David left that practice and received $12,000 in cash for the equity in the building, some of the equipment, and the law library. Both he and Moore retained their individual accounts.

As a result of this sequence of events, the price paid for Frisbee's interest does not necessarily represent the market value of the Stufft Law Firm. Neither is there evidence to support the court's finding that David's average net taxable income from the law business is $35,000. Mayla's own exhibits provide that David's net law income for the last three, five, and seven years averaged less than $35,000. Thus, while the value of the law firm may be over and above the value of its office equipment, there is no evidence in the record to support the $75,000 assessment by the court. We therefore conclude that the court erred in valuing the Stufft Law Firm and we remand this issue to the District Court for further findings in support of a determined market value for the Stufft Law Firm.

As for the Stufft Farm stock, David claims the value of the stock is actually $64 per share and the value of his total shares is $1,280. Mayla concedes that the value of the Stufft Farm stock is in question. Accordingly, we remand this issue back to the District Court for further findings to support a valuation of the Stufft Farm stock.

Finally, David contends that the court's assignment of debt was inequitable. David maintains that the court unfairly

distributed the house to Mayla while assigning the mortgage on the house to him.  The court, however, ordered that David "continue paying the debt on the family home until such **time** as it is sold. The remaining original debt for the home shall be paid out of the sale of the home at the **time** of closing."  Assuming the house is up for sale in light of the fact that Mayla has moved from Montana, the court's distribution to Mayla was actually the value of the home minus the first mortgage and David was not unduly burdened with that debt.

Nevertheless, David contends he was still assigned a majority of the debt and the District court's assignment remains inequitable.  "As with the division of property, the District Court is given wide discretion in the division of debts."  In re Marriage of Staudt (1985), 216 Mont. 196, 201, 700 P.2d 175, 178.  We have reviewed the court's assignment of debt and note that the debt assigned to David is either personal to him or to his business. David took out a second mortgage on the family home and incurred further debt to purchase a practice and office building from which he alleges he received $12,000 that he then invested in his current practice.  David's current practice, Stufft Law Firm, is an asset of David and we have said that the debts of a business are the responsibility of whomever has the interest in that business.  <u>See</u> In re Marriage of Childers (1985), 216 Mont. 125, 127, 700 P.2d 594, 595. Accordingly, there is sufficient evidence to support the court's distribution of debt and that evidence  has  not  been

misapprehended nor do we have any conviction that a mistake has been made. We therefore conclude the District Court did not abuse its discretion in assigning the majority of the debt to David. However, we direct the District Court to reconsider its equitable distribution of the assets and debts of the marital estate given that we have remanded to the court its determination of value for the Stufft Law Firm and the Stufft Farm stock.

ISSUE 4

Did the District Court err in awarding maintenance to Mayla?

The District Court ordered David to pay maintenance of $2,000 per month to Mayla "for twenty-four months or until she becomes employed by the school system whichever occurs first." We review a district court's award of maintenance to determine if the findings of fact are clearly erroneous. In re Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355. As stated in Issue 3, we use the three-part test set forth in DeSaye, 820 P.2d at 1287, to determine if the court's findings are clearly erroneous.

Maintenance is provided for in § 40-4-203, MCA, whereby

the court may grant a maintenance order for either spouse only if it finds that the spouse seeking maintenance:
(a) lacks sufficient property to provide for his reasonable needs; and
(b) is unable to support himself through appropriate employment . . . .
(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:
(a) the financial resources of the party seeking maintenance, including marital property apportioned to

10

him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

. . .

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

David claims his monthly expenses exceed his monthly revenue and therefore he is not capable of paying $2,000 per month in maintenance. Mayla disputes David's purported income and debt while the court concluded that he received $50,000 as farm manager and $35,000 in his law practice. As stated in Issue 3, there is no evidence to support the court's finding of income relating to David's legal practice and as a result the value of David's law practice is in question. Furthermore, David claims that he resigned from his position as farm manager, thus depleting his past income. If a past employment position remains available, we have said that a court may impute that income to a party in a divorce proceeding. In re Marriage of Chiovaro (1991), 247 Mont. 185, 189, 805 P.2d 575, 577. Nonetheless, there is no evidence in the record as to whether the farm manager position was available to David at the time of the dissolution.

While Mayla presented evidence of need until such time as she becomes employed, the court's award of maintenance is not consistent with evidence of David's financial resources. In addition, the court's award for child support which has been remanded should be considered in an award of maintenance. Section 40-4-203(2)(a), MCA. We therefore remand the issue of maintenance

11

to the District Court for reconsideration with regard to its findings for child support and David's available income.

We affirm in part, reverse in part, and remand to the District Court for further findings consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

_____
District Court Judge Ted L. Mizner
sitting for Justice Karla M. Gray

_____
District Court Judge John W. Whelan
sitting for Justice W. William Leaphart

_____
District Court Judge Jeffrey M. Sherlock
sitting for Justice James N. Nelson

12