No. 97-040

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


IN RE MARRIAGE OF

DAVID F. STUFFT,

Petitioner and Appellant,

and

MAYLA S. STUFFT,

Respondent and Respondent.



APPEAL FROM:    District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable David Cybulski, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

David F. Stufft, Attorney at Law, Cut Bank, Montana

For Respondent:

C. W. Leaphart, Jr., The Leaphart Law Firm,
Helena, Montana



Submitted on Briefs: October 23, 1997

Decided:    December 19, 1997
Filed:


_____
Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

The petitioner, David F. Stufft, petitioned the District Court for the Eighth Judicial District in Cascade County for dissolution of his marriage to the respondent, Mayla S. Stufft. The District Court entered a decree which dissolved the parties' marriage, divided the marital estate, established David's responsibility for child support, and awarded maintenance to Mayla. David appeals the maintenance and child support awards, and the division of the parties' property. We affirm in part and reverse in part the judgment of the District Court, and remand for further proceedings consistent with this opinion.

The issues on appeal are as follows:

1. Did the District Court err when it divided the marital estate?
2. Did the District Court err when it awarded child support?
3. Did the District Court err when it awarded maintenance to Mayla?

## FACTUAL BACKGROUND

David and Mayla Stufft were married in 1971. Three children were born of the marriage. During their marriage, David attended and graduated from law school. Following his graduation in 1977, the family moved to Cut Bank, where David continues to practice law. The parties' marriage was dissolved in 1995 and David and Mayla were granted joint custody of the children. Mayla was designated the primary residential custodian.

In the parties' first decree of dissolution, the court distributed the property in the marital estate and awarded Mayla child support and maintenance. David appealed from the District Court's decision. See In re Marriage of Stufft (1996), 276 Mont. 454, 916 P.2d 767. We remanded for reconsideration of issues related to property valuation, child support, and maintenance. This appeal is from the District Court's decision following remand.

As a result of the first appeal, we remanded this case to the District Court for: (1) findings which would explain how it calculated its award of child support based on the guidelines and any deviation therefrom; (2) findings to support a valuation of the Stufft Farm Stock and the Stufft Law Firm; and (3) reconsideration of maintenance in the context of the other issues. See Stufft, 276 Mont. at 461-62, 916 P.2d at 770-72. We also instructed the District Court to reconsider its distribution of the marital estate assets and debts once the court had determined the value of the Stufft Law Firm and the Stufft Farm Stock. See Stufft, 276 Mont. at 461, 916 P.2d at 772.

Following remand, the District Court held another hearing and heard additional testimony. On January 13, 1997, the District Court issued its findings of fact and conclusions of law, and on January 22, 1997, issued its modified decree. David

appeals
the District Court's valuation and division of marital property and its award of child
support and maintenance.

ISSUE 1

Did the District Court err when it divided the marital estate?

We review the findings of fact upon which a district court's division of marital property is based to determine whether they are clearly erroneous. See Stufft, 276 Mont. at 459, 916 P.2d at 770. If those findings are not clearly erroneous, the district court's distribution of property is discretionary and is reviewed for an abuse of discretion. See Stufft, 276 Mont. at 459, 916 P.2d at 770.

The District Court distributed assets worth $111,421 to Mayla, and assets worth $133,500 to David. As part of this distribution, Mayla received a certificate of deposit worth $19,800, furniture valued at $20,000, the family home valued at $155,000, a vehicle valued at $5,500, and a travel trailer valued at $2,000. David received the assets of the Stufft Law Firm, which the court valued at $50,000, 20 shares of stock from Stufft Farms valued at $1,000, furniture valued at $10,000, a boat and trailer valued at $9,500, a horse valued at $500, a 1994 Dodge valued at $20,000, and 50 percent interest in David's partnership rental building valued at $20,000. The court assigned debt in the amount of $76,233 to Mayla, and debt in the amount of $112,000 to David. On appeal, David assigns error, in general, to the District Court's property distribution and, specifically, to the District Court's award of the $19,800 certificate of deposit to Mayla, the distribution of furniture of sentimental value, the award of the total value of the family home to Mayla, the assignment of debt related to the family home and David's law practice, the valuation of the Stufft Law Firm, the distribution of the family's horse, and the value of the automobile awarded to Mayla. We will address each of these issues individually.

A. Certificate of Deposit

David contends that he spent the value of the $19,800 certificate of deposit awarded to Mayla on operating expenses for his law firm prior to the original trial and, therefore, that he should not be required to pay Mayla the equivalent of what is now a dissipated asset. According to David, the court awarded a "non-existent" certificate of deposit to Mayla which was spent by the time of the first trial. We conclude, however, that David's own testimony and proposed findings of fact and conclusions of law support the District Court's award. First, we note that at a hearing held on December 10,

1996,
David testified that the certificate of deposit was in existence at the time of trial.  Second,
in his proposed findings of fact and conclusions of law from the original hearing, David
lists as a marital asset a $19,800 certificate of deposit as property that should be awarded
to him.  Based on this evidence, we conclude that the District Court's finding with regard
to the existence of the certificate of deposit was not clearly erroneous and its award of
that item was not an abuse of discretion. The fact that David chose to dissipate what the
District Court had determined to be a marital asset does not preclude the distribution of
the value of that asset to Mayla.

B.   Furniture

David next contends that Mayla has in her possession several items of furniture which have sentimental value to David.  The District Court ordered Mayla to return those
items or certify in writing that she no longer has them.  The court also ordered that if any
furniture item is being used for the benefit of any of the children, then it should be
returned when that child matures and leaves the family home.  At trial, David described
these items of furniture as being a roll-top desk, an Indian hammerhead, antique living
room furniture, half of a collection of oriental rugs, an antique oak table, and an antique
Colt revolver.  The court described these items of furniture, valued at $10,000, as including a roll-top desk, antique living room furniture, a toboggan, and an Indian hammerhead, but failed to mention the collection of oriental rugs, the antique oak table,
and the antique Colt revolver.  We affirm the District Court's finding which requires
Mayla to certify, in writing, that she no longer has possession of those items.  We also
affirm the District Court's finding that Mayla keep in possession the items of furniture
used for the benefit of the children until the children have left Mayla's home.  However,
because the District Court failed to designate a specific distribution for half of the
collection of oriental rugs, the antique oak table, and the antique Colt revolver, we remand this portion of the case to the District Court for a distribution of those items or
an explanation of whether they are included in the $10,000 furniture distribution to David.

C.   Award of the net sale proceeds of the family home to Mayla

David  maintains that the District Court erred when it awarded the net sale proceeds of the family home to Mayla and did not recognize his contributions to the

financing of the home.  He contends that the District Court should have credited him with
$11,800 of the purchase price as funds traceable to a trust fund owned by David prior to
the marriage.  David also argues that the District Court should have credited him for the
$4,200 he spent on repairs to the home before it was sold.

In In re Marriage of Eklund (1989), 236 Mont. 77, 768 P.2d 340, we held that a portion of the marital estate may be set aside if it is traceable to one party or the other. Whether it is traceable depends on the adequacy of the evidence presented in the case. Premarital property is considered commingled with the marital estate when there is no attempt during the marriage to segregate the property.  See In re Marriage of Danelson (1992), 253 Mont. 310, 318, 833 P.2d 215, 220.  In Eklund, the husband's parents loaned him $60,000 to buy a house.  A promissory note named only the husband as the obligor and named both of his parents as payees.  The parties had been married for four years when the husband filed for dissolution.  At trial, the parents testified that their donative intent was to make a gift solely to the husband.  Pursuant to the tax planning advice the parents received, they both intended to make a separate $10,000 gift to their son each year, as they had done with each of their other children.  Eklund, 236 Mont. at 79, 768 P.2d at 342.  The facts in Eklund present a clear case of funds which are traceable to one party.  The situation in this case is very different.  David's trust fund money was property which he brought into the marriage in 1971 and used to help finance the family home.  Neither David nor Mayla testified that David intended to keep those funds separate from the marital estate.  David and Mayla's marriage lasted for twenty-four years, as opposed to the four-year marriage in Eklund.  Based on this evidence, we conclude that there was no evidence that David made any effort to segregate his contribution to the parties' home; it has now been commingled with the marital estate; and the District Court's award of the entire value of the family home to Mayla was not an abuse of discretion.

David also contends that the District Court erred when it did not give him credit for the $4,200 he spent preparing the family home for sale after Mayla moved out.  The District Court considered David's contention but found that his $4,200 was offset by the property he removed from the house and the fact that he failed to pay some of the house payments as previously ordered by the court.  Based on these facts, we again conclude that the District Court did not abuse its discretion.  We therefore affirm the

District
Court's award of the net proceeds of the sale of the family home to Mayla.

D.    Assignment of debt related to the family home and Davidþs law practice

We have previously reviewed the findings with regard to the District Court's assignment of debt related to the family home and David's law practice, and have stated our conclusion in Stufft, 276 Mont. 454, 916 P.2d 767.  In that case, we rejected David's contention that the distribution was "unfair" and affirmed the District Court's debt allocation.  We stated:

We have reviewed the court's assignment of debt and note that the debt assigned to David is either personal to him or to his business.  David took out a second mortgage on the family home and incurred further debt to purchase a practice and office building from which he alleges he received $12,000 that he then invested in his current practice.  David's current practice, Stufft Law Firm, is an asset of David and we have said that the debts of a business are the responsibility of whomever has the interest in that business. See In re Marriage of Childers (1985), 216 Mont. 125, 127, 700 P.2d 594, 595.

Stufft, 276 Mont. at 461, 916 P.2d at 771.

Following the original property distribution, in which David was awarded the Stufft law firm and Mayla the family home, David converted to his own use $27,885.56 of the proceeds from the sale of the family home.  The District Court, however, did not award any of the proceeds from the sale of the home to David.  All of the net proceeds were awarded to Mayla.  On appeal, David contends that his conversion of these funds was justified because he used the money to pay off the mortgage on his law practice which, in his opinion, was for the benefit of both Mayla and him.  For this reason, David argues, he should be free of any obligation to repay Mayla that amount.  The District Court, however, ordered that David repay Mayla the amount which he converted for the benefit of his law practice.  Based on our decision in Childers in which we said that the debts of a business are the responsibility of whomever has the interest in that business, we agree with the District Court that it was not unreasonable to assign the debt to finance David's law firm to David since he was the party who received that asset in the marital property distribution.  Accordingly, we affirm the District Court's distribution of the debt related to the family home and David's business.

E.    Value of the Stufft Law Firm

David contends that the District Court erred when it determined the value of the Stufft Law Firm.  He argues that the District Court overvalued the goodwill of the law firm and assigned that amount to David as an asset in the distribution of the marital property.  In In re Marriage of Hull (1986), 219 Mont. 480, 712 P.2d 1317, we discussed the valuation of the goodwill of a professional practice and concluded that the

goodwill of such a practice may be a marital asset subject to property division in a marriage dissolution.  See Hull, 219 Mont. at 485, 712 P.2d at 1321.  In Hull, we adopted the following language from the Washington Supreme Court as part of our analysis and determination of the value of goodwill: "The determination of [goodwill] value can be reached with the aid of expert testimony and by consideration of such factors as the practitioner's age, health, past earning power, reputation in the community for judgement, skill and knowledge, and his comparative professional success."  Hull, 219 Mont. at 484, 712 P.2d at 1320 (citing In re Marriage of Fleege (Wash. 1979), 588 P.2d 1136).  In Hull, the husband argued that this Court should pay more attention to the testimony of two members of the same profession who practiced with him, as well as the testimony of the husband's own accountant, than to the testimony of a CPA who specializes in valuing businesses. See Hull, 219 Mont. at 488, 712 P.2d at 1322. We concluded that the CPA's analysis of the value of goodwill was understandable and reasonable and had considered the various factors which we had approved of in our adoption of Washington's goodwill analysis.  We further concluded that the evidence submitted by that CPA was understandable, substantial in nature, and reasonable.  We held that the district court did not err when it assigned the value it did to the husband's professional practice based on the expert testimony of that CPA.  See Hull, 219 Mont. at 488, 712 P.2d at 1323.

Similarly, in this case, Mayla presented the expert testimony of a CPA regarding the valuation of the goodwill associated with David's law firm.  David maintains that the CPA's appraisal of the Stufft Law Firm's goodwill is inadequate and based on a faulty analysis.  The District Court recognized that David's cross-examination of the CPA revealed some inadequacies in the CPA's appraisal; however, the court found that the CPA's appraisal was the most credible evidence presented to the court.  David presented no expert testimony to contradict that of Mayla's CPA, and maintained that the law firm was merely worth the value of its office equipment.  In comparison, the CPA testified that his expertise for the past ten years has been in the valuation of various types of professional practices.  His method of valuing the goodwill of professional practices is to convert the law firm's earnings to a multiple of the gross income, based upon the profitability of the business, and its going concern value based on an ongoing customer group.  The CPA relied principally upon the law firm's tax returns to find the fee income of the law firm, then applied a goodwill factor of 25 percent to the value of the business. The 25 percent figure is based upon statistics for similar types of professional practices where the rate of retention of clients is comparable.  The amount he arrived at from this equation was exclusive of the underlying assets in the business.  The CPA arrived at a

goodwill value for the Stufft Law Firm of $43,605.

Although David's cross-examination of the CPA raised some relevant questions regarding the method of valuation, David offered no expert testimony which might offer a reasonable alternative to the CPA's valuation of the Stufft Law Firm's goodwill. The District Court, therefore, found that the CPA's appraisal was the most credible evidence presented to the court and concluded that the goodwill of David's law firm is valued at $43,605.

Based on the testimony presented in this case, and the fact that it was uncontroverted by any comparable expert testimony from David, we conclude that the District Court's valuation of the goodwill attached to David's law practice was supported by substantial evidence and was not clearly erroneous.

F.   Value and distribution of the horse awarded to David and the vehicle awarded to Mayla

With regard to the valuation of the horse awarded to David and the vehicle awarded to Mayla, we reverse the findings of the District Court.  After a review of the record we have, first, found no indication of who actually owns the horse valued at $500 and distributed as an asset to David.  If neither Mayla nor David own the horse, and it is instead owned by the parties' daughter, then it cannot be distributed as an asset of the marital estate.  Second, Mayla replaced the family van with another vehicle sometime after the date of the first trial in this matter.  At the time of the dissolution, Mayla represented that the van had a value of $15,000, against which there was a debt of $5,467.  The vehicle for which she exchanged the van has a value of $5,500, but $4,420 is owed for that vehicle.  Despite this exchange of property, the District Court failed to account for the difference in value of the two vehicles and any income gained from the sale of one vehicle and purchase of the other. Therefore, because the findings of the District Court regarding the horse and automobile are not supported by substantial evidence, we conclude that they are in error and we remand to the District Court for a determination of value and redistribution.

ISSUE 2

Did the District Court err when it awarded child support?

The District Court ordered David to pay Mayla the sum of $336 per child per month for the care, support, and maintenance of the parties' minor children.  We review findings of fact to determine whether they are clearly erroneous.  See Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 322, 820 P.2d 1285, 1286.  We review a district courtþs award of child support to determine whether the district court abused its

discretion.  See In re Marriage of Craib (1994), 266 Mont. 483, 490, 880 P.2d 1379, 1384.  This Court has stated that "a district court must apply its discretion in a realistic manner, taking into account the actual situation of the parties."  In re Marriage of Noel (1994), 265 Mont. 249, 252, 875 P.2d 358, 359.  See also D.F.D. and D.G.D. (1993), 261 Mont. 186, 203, 862 P.2d 368, 378; In re Marriage of Anderson (1993), 260 Mont. 246, 255, 859 P.2d 451, 457.  Additionally, the court must consider the factors set forth in § 40-4-204, MCA, as well as those found in the Child Support Guidelines, Title 46, chapter 30, Montana Administrative Rules.  A district court is required to make specific findings in writing to explain its calculation of child support and any deviation from the guidelines.  See In re Marriage of Brandon (1995), 271 Mont. 149, 152, 894 P.2d 951, 953.  As with the District Court's property distribution, David assigns error to several of the findings which underlay the award of child support.  We will address each issue individually.

A.    David's net income

David's first assignment of error is the District Court's classification of David's self-employment earnings as wages, instead of as self-employment net earnings.  On appeal, David claims that the District Court calculated his net income as $50,000, when in actuality his net income is much less.  Upon review of the District Court's findings, we note that David is mistaken and the District Court calculated his net income to be $30,040.

The District Court listed David's $50,000 income under the section of the child support guidelines worksheet labeled "Gross income (annual)." This section includes "self-employment net earnings" as well as "wages" and various other sources of income. There is no indication in the record that the District Court intended to categorize this income as "wages" and not as "self-employment net earnings." The District Court took into consideration the fact that a self-employed individual has greater taxes for such items as social security in the "Allowable deductions (annual)" portion of the worksheet.  In David's case, his total allowable deductions, including alimony, federal, state, old fund, and social security taxes, totaled $19,960.  David's total net income was, therefore, accurately calculated by the District Court as $30,040 which coincides with David's contention on appeal that "[his] net earning at best as reflected by his own tax returns is not even $40,000."  Accordingly, we affirm the District Court's calculation of David's net income.

B.    Mayla's gross income

David's second assignment of error with regard to the child support award is the

District Court's calculation of Mayla's gross income.  His argument on appeal is that the
District Court undervalued Mayla's income and, therefore, caused him to have to pay a
greater amount in child support.  David contends that Mayla's gross income is $38,811.
This  includes her wages of $33,912 and $4,899 in annual employer provided medical
benefits.  The District Court, on the other hand, concluded that Mayla's gross income
totals $39,912, which includes her wages of $33,912 and $6,000 of "other taxable
income."  The District Court calculated Mayla's gross income as $1,101 more than
David's own calculation of her income.  The District Court's inclusion of $6,000 as
"other taxable income" more than sufficiently provides for such things as Mayla's annual
employer provided medical benefits.  We therefore affirm the District Court's calculation
of Mayla's gross income.

C.   Mayla's assets

David argues that the District Court erred when it calculated the value of Mayla's
bank account and other assets.  He contends that at the time the court determined the
amount of child support David was to pay, Mayla had $10,000 in her bank account and
a certificate of deposit worth $14,000.  During the second trial in this matter, Mayla
testified to the existence of these assets; however, these amounts are not included in the
child support guidelines worksheet used by the court.  If, in fact, these assets were
present at the time the child support calculations were made, then the District Court must
take them into consideration as part of the child support calculation. Therefore, we vacate
the child support award and remand this issue to the District Court for a redetermination
of the parties' child support obligations after considering those funds.

D.   Deductions from Mayla's gross income

David contends that the District Court erred when it allowed as deductions from
Mayla's gross income, $600 per year for union dues, $2,204 per year for retirement
contributions, $248 per month for medical insurance premiums, and all Montana
Worker's Compensation Employee Tax Liability payments. David argues that either there
is no evidence which would support these deductions or, in the case of the Montana
Worker's Compensation Tax Liability payments, there is evidence that directly contradicts
the District Court's inclusion of that amount as a deduction from Mayla's gross income.
We agree, based on our review of the record, that there was no proof of Mayla's
obligation to pay these amounts.  Therefore, when the District Court recalculates the
child support amount on remand, we hold that these amounts are not to be included as
deductions from Mayla's income.

E.   Variance from the child support guidelines

David further contends that the District Court failed to consider as a variance from
the child support guidelines the cost of long-distance visitation with his children.
According to David, this cost amounts to $862 per year in travel expenses.  David also

argues that the District Court failed to take into consideration, as a variance from the child support guidelines, his financial condition.  A court is allowed to grant a variance from the child support guidelines to account for the financial condition of a parent and the costs related to long-distance visitation. See 46.30.1543(h) and (l), ARM.  Upon review of the child support guidelines worksheet used by the District Court, we agree that the court failed to take into consideration both the cost of David's long-distance visitation with his children and his financial condition when calculating the amount of child support.

David presented evidence at trial of  long-distance visitation expenses, as well as his present debt.  It is unclear why the District Court deviated from the guidelines by not considering these factors in its calculation of child support.  A district court is required to make specific findings in writing which explain how it calculated its award of child support pursuant to the guidelines and any deviation therefrom.  See Stufft, 276 Mont. at 458, 916 P.2d at 770.  Therefore, these factors should be considered by the District Court as part of its recalculation of child support after remand.

F.    Child Support Enforcement Division lien

David's final assignment of error with regard to the child support calculations is that the court abused its discretion by not crediting toward his back child support obligation, amounts seized by virtue of a Child Support Enforcement Division lien.  Upon the sale of the house and property jointly owned by the parties, although awarded to Mayla in the property distribution, the $155,000 sale proceeds were divided into a number of payments to various creditors.  One such payment was made to Mayla for back child support by virtue of a CSED lien in the amount of $13,163.70.  With regard to this payment the District Court stated "[t]he payment of the child support lien to [Mayla] at best was a reduction of her net equity in the amount of $6,581.85 for half a reduction of [David's] net equity amount.  The $6,581.85 applicable to [Mayla] cannot be considered as child support from [David]."  The court's reason for not crediting the CSED payment as back child support from David is that the house itself and the proceeds therefrom were distributed to Mayla.  Therefore, all the funds remaining after the sale of the home and payment of creditors are Mayla's.  A child support payment lien against the sale of the home would only give Mayla funds which already belonged to her.  Although the CSED characterized these funds as back child support payments, the District Court correctly concluded that amounts allocated to Mayla pursuant to the property

settlement agreement cannot be a substitute for David's child support obligation. Therefore, we conclude that the District Court correctly found that David's total arrearage, as of the date of its findings and conclusions, amounts to $13,712. Accordingly, we affirm this finding of the District Court.

ISSUE 3

Did the District Court err when it awarded maintenance to Mayla?

On remand, the District Court ordered David to pay maintenance in the following amounts:

6.    Pursuant to the factors set forth in Section 40-4-203 M.C.A., for the period of May 1995 through June 1996 Wife is entitled to receive maintenance in the amount of $2000.00 per month.  Husband owes Wife for 14 months of maintenance at $2000.00 per month, or $28,000.00. Pursuant to the factors set forth in Section 40-4-203 M.C.A., from July 1996 Wife is entitled to receive maintenance in the sum of $500.00 per month.  Husband owes Wife for maintenance from July 1996 to January 1997, 8 months at $500.00, or $4000.00.  When Husband has paid in full the $47,685.56 owing under 5 above, the amount of maintenance owing will reduce to $250.00 per month.  Husband owes Wife $32,000.00 as and for unpaid maintenance.

We review a district court's findings of fact related to maintenance to determine if they are clearly erroneous.  See In re Marriage of Eschenbacher (1992), 253 Mont. 139, 142, 831 P.2d 1353, 1355.  If they are not clearly erroneous, we review the district court's award to determine if there has been an abuse of discretion.  See In re Marriage of Smith (1993), 260 Mont. 533, 535, 861 P.2d 189, 190.

Maintenance is provided for in õ 40-4-203, MCA, whereby:

[T]he court may grant a maintenance order for either spouse only if it finds the spouse seeking maintenance:

(a) lacks sufficient property to provide for his reasonable needs; and

(b) is unable to support himself through appropriate employment . . . .

(2) The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, and after considering all relevant facts including:

(a) the financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

. . . .

(c) the standard of living established during the marriage;

(d) the duration of the marriage;

(e) the age and the physical and emotional condition of the spouse seeking maintenance; and

(f) the ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance.

On appeal, David argues that, when determining its award of maintenance, the court failed to take into consideration three facts regarding Mayla's income and assets:

first, that Mayla has been gainfully employed as a teacher since September 1995 with a salary of $33,912 per year; second, that she receives medical premiums of $408.33 per month; and third, that she has a bank account balance of $10,000. He also claims that the state of his income and expenses does not support an award of maintenance.

The District Court based its award of maintenance, in part, on David's farm salary, which the court identified as $50,000 per year, and David's highest earned annual salary as an attorney of $92,000 per year. The court noted that David himself claimed that his income would continue at between $40,000 and $60,000 annually. Based on these figures, the District Court found that David has the ability to pay the maintenance ordered.

David contends that because of the sale of the Stufft family farm, income resulting from any work he performed as a manager of the farm is no longer possible for him to obtain. He further contends that the $92,000 annual salary from his law practice was a one-time salary which was the result of one large verdict during that year. Otherwise, David claims, his law practice consists of one regular client in Cut Bank and an average annual salary of $36,400.

While Mayla presented evidence of need, the District Court's award of maintenance is not consistent with the evidence of David's financial condition. Nor does it appear to take into consideration Mayla's bank account balance and the $408.33 worth of medical premiums she receives each month. An award of maintenance must be based on substantial evidence presented by the parties and clearly identified and articulated by the court. Because the evidence of the parties' relative financial circumstances does not support an award of maintenance after Mayla commenced her employment, we vacate the award following that date and remand to the District Court for a calculation of the correct amount due prior to that date.

We affirm in part, reverse in part, and remand to the District Court for further findings consistent with this opinion.


/S/   TERRY N. TRIEWEILER


We Concur:

/S/   J. A.   TURNAGE
/S/   JIM REGNIER
/S/   WILLIAM E. HUNT, SR.
/S/   TED L. MIZNER
        District Judge, sitting in place of

Justice James C. Nelson

Justice James C. Nelson