No. 98-025

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 240N

IN RE MARRIAGE OF

JOHN ROBERT CROSS,

Petitioner and Respondent,

and

CONNIE LYNN CROSS,

Respondent and Appellant.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Yellowstone,

The Honorable Diane G. Barz, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Linda L. Harris; Harris Law Firm, P.C., Billings, Montana


For Respondent:

Chris J. Nelson, Attorney at Law, Billings, Montana

Submitted on Briefs: July 23, 1998

Decided: October 1, 1998

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

**¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.**

**¶2 John Robert Cross filed a petition for dissolution of his marriage to Connie Lynn Cross in the District Court for the Thirteenth Judicial District in Yellowstone County. The District Court granted the dissolution and, after a trial, divided the marital property. Connie appeals from the District Court's valuation and distribution of the marital estate. We affirm the judgment of the District Court.**

**¶3 Three issues are presented on appeal:**

**¶4 1. Did the District Court err in its valuation of the marital estate?**

**¶5 2. Did the District Court err in its distribution of marital property?**

**¶6 3. Did the District Court err by adopting John's proposed findings of fact?**

FACTUAL BACKGROUND

**¶7 John and Connie Cross were married in December 1991 in Yellowstone County and separated on September 29, 1994. They had no children together. A petition for dissolution was filed on November 18, 1994. The marriage was dissolved on April 17, 1997, and a trial was held concerning the distribution of the marital estate on July 2, 1997.**

**¶8 Prior to and during the first half of the marriage, John owned and operated a donut shop, while Connie worked as a truck driver for Empire Sand & Gravel. The donut shop was not very successful and Connie was the primary income-earner during this period. Her annual salary was approximately $30,000. In the summer of 1993, she quit her job to become a horse trainer. Her income as a horse trainer has been approximately $500 per month. John took a job in Russia with an oil-drilling company and became the primary income-earner. Until their separation, John deposited his earnings into the parties' joint checking account.**

**¶9 John and Connie owned assets both jointly and individually. During the course of their marriage, they purchased and sold several residential properties in the Billings area. The marital assets at the time of separation in September 1994 consisted primarily of a house on Jackson Street (the Jackson property), real property just outside Billings (the Bitterroot property), a mobile home located on the Bitterroot property, a horse trailer, and horses.**

**¶10 Prior to the marriage, Connie owned a home in Billings which was sold during the marriage. Its proceeds were used as part of the down payment for the Bitterroot property. John purchased the Jackson property prior to the marriage. During the marriage, he transferred the property to Connie's name alone because his credit history precluded refinancing.**

**¶11 After the separation and while John was in Russia, Connie sold the Jackson property. The District Court ordered that the sale proceeds be paid into an interest-bearing account and not be spent during the pendency of the dissolution. However,**

Connie retained the proceeds, and during the separation used the proceeds to make payments for and improvements to the Bitterroot property, which she occupied. John continued to work but no longer deposited his earnings into a joint account.

¶12 In 1980, John and two brothers had purchased a ranch in Wyoming. The property was acquired by a contract for deed which was paid off in 1990, prior to the marriage. In January 1995, three months after separating from Connie, John and one of his brothers each purchased one-half of the third brother's interest in the ranch. John expended $18,600 for his additional interest.

¶13 During the trial, which occurred after the parties' marriage was dissolved and more than two and one-half years after the parties separated, John testified that he had approximately $20,000 in his checking account.

¶14 The District Court made no mention of the $20,000 in its findings of fact. It specifically excluded John's Wyoming real property from the marital estate. It distributed half of the marital estate to each party, awarding John the Bitterroot property (appraised at between $75,000 and $80,500 but encumbered by a contract for deed with a balance of $35,561), while Connie retained the proceeds from the sale of the Jackson property, the mobile home and its contents, the horse trailer, and the horses (collectively valued at $45,567.50).

ISSUE 1

¶15 Did the District Court err in its valuation of the marital estate?

¶16 We review a district court's division of marital property to determine whether the findings on which it relied are clearly erroneous. *See In re Marriage of Stufft* (1996), 276 Mont. 454, 459, 916 P.2d 767, 770. A court's findings are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed. *See Interstate Prod. Credit Ass'n v. DeSaye* (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287. If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion. *See Stufft*, 276 Mont. at 459, 916 P.2d at 770; *In re Marriage of Hogstad* (1996), 275 Mont. 489, 496, 914 P.2d 584, 588; *In re Marriage of Smith* (1995), 270 Mont. 263, 267-68, 891 P.2d 522, 525.

¶17 The District Court found that John's Wyoming property was acquired prior to the marriage and therefore not subject to distribution. Connie acknowledges that John purchased one-third of the Wyoming property prior to their marriage, but contends that he purchased a further one-sixth of the property for $18,600 during the marriage and that this portion of his interest should be included in the marital estate.

¶18 Section 40-4-202, MCA, sets forth the guidelines for distribution of property as part of a marriage dissolution and provides in relevant part:

(1) In a proceeding for dissolution of a marriage . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both . . . . In dividing property acquired . . . by a spouse after a decree of legal separation, the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

(Emphasis added.)

¶19 Pursuant to the statute, the district court has broad discretion to distribute the marital estate in a manner which is equitable to each party according to the circumstances of the case. *See In re Marriage of Maedje* (1994), 263 Mont. 262, 265, 868 P.2d 580, 582.

¶20 Here, the record demonstrates that John purchased one-sixth of the Wyoming property in January 1995. Because John and Connie were married four years earlier, the District Court's finding that all of the Wyoming property is premarital property was erroneous. Regardless of the mistake, however, we affirm the exclusion of all John's Wyoming property from the marital estate because that portion which was not acquired prior to marriage was acquired after he and Connie permanently

**separated.**

**¶21 If a district court reaches the correct result, we will uphold its judgment regardless of the reasons for its decision.** *See In re Marriage of Shupe* (1996), 276 Mont. 409, 419, 916 P.2d 744, 750; *Robinson v. First Wyoming Bank* (1995), 274 Mont. 307, 319, 909 P.2d 689, 696.

**¶22 When the district court considers property acquired after a decree of legal separation, § 40-4-202, MCA, requires that it consider the contributions of the other spouse to the marriage, including the nonmonetary contributions of a homemaker, the extent to which such contributions have facilitated the maintenance of the property, and whether or not the property division serves as an alternative to maintenance agreements. These factors also apply to property acquired prior to marriage.** *See In re Marriage of Engen*, 1998 MT 153, ¶¶ 28-29, 55 St. Rep. 595, ¶¶ 28-29. **Property acquired prior to marriage is excluded from the marital estate, when there is no evidence that anything done during the marriage contributed to its acquisition or maintenance.** *See Engen*, ¶¶ 28-29 (citing *In re Marriage of Bradshaw* (1995), 270 Mont. 222, 230, 891 P.2d 506, 511) .

**¶23 The principle for the exclusion of property acquired after separation is the same. When the separation is permanent and there is no evidence that a nonacquiring spouse made any contribution to the acquisition or maintenance of assets acquired after separation, those assets should not be considered part of the marital estate. "To include in the valuation of the marital estate any accumulation of financial wealth or, conversely, the increase in financial liabilities of either spouse subsequent to the termination of the 'marital relationship' may effectuate an injustice and frustrate the intended purpose of division of marital property."** *In re Marriage of Wagner* (1984), 208 Mont. 369, 378, 679 P.2d 753, 757-58. *See also In re Marriage of Gebhardt* (1989), 240 Mont. 165, 169, 783 P.2d 400, 403. **Although, in this case, there was no formal decree of separation, matters of property distribution are equitable in nature and, therefore, the lack of a decree is not determinative.**

**¶24 In** *Wagner*, **the husband and wife divided their assets and obligations when they separated. Prior to the final dissolution, the husband dissipated most of his share of the liquid assets without servicing the debt on the family ranch, which he had also retained. In contrast, the wife used her share of the marital assets to reestablish herself in her occupation. We rejected the district court's inclusion of post-separation**

assets and liabilities in the marital estate, stating that "the District Court essentially rewarded the husband for encumbering the family ranch and penalized the wife for her ambitious effort after the broken marriage to negotiate her own independent financial security." *Wagner,* 208 Mont. at 380-81, 679 P.2d at 759.

¶25 In *Gebhardt*, the husband incurred several obligations after separation. We held that the wife should not be penalized for the husband's investment decision once their paths diverged in regard to financial matters. *Gebhardt*, 240 Mont. at 170, 783 P.2d at 403.

¶26 Here, the parties permanently terminated the marital relationship at the time of separation. John no longer lived at the Bitterroot property. He stopped depositing his paycheck in the household account. Between the separation and dissolution, Connie controlled the Jackson property proceeds and the Bitterroot property. She continued to work as a horse trainer, virtually without an income, while using the proceeds from the sale of the Jackson property in violation of a court order to make improvements and to service the debt on the Bitterroot property. There is no evidence in the record of any attempt to continue the relationship or to reconcile after the date of separation. The petition for dissolution was filed a little more than one month later. Additionally, there is no evidence that Connie contributed in any way to the maintenance or acquisition of the additional Wyoming property after separation. When the factors of § 40-4-202, MCA, are properly taken into consideration, we conclude that the Wyoming property was properly excluded from the marital estate.

¶27 Connie also contends that, when valuing the marital estate, the District Court erred when it failed to consider the $20,000 in John's checking account at the time of trial. She contends that exclusion of this asset from the marital estate when its source has not been discerned is reversible error.

¶28 During trial in July 1997, John testified that his checking account as of that date contained approximately $20,000. Prior to the parties' separation in September 1994, John's paychecks were deposited in a jointly held household account. Based on the record in this action, we hold that there is substantial, credible evidence that the funds in John's individual account as of July 1997 were acquired during the thirty-three months between separation and trial. Because the record demonstrates they were not a product of the marital partnership, they were properly excluded from the

marital estate. *See Wagner*, 208 Mont. at 378, 679 P.2d at 757-58.

¶29 For these reasons, we affirm the District Court's exclusion of John's property acquired after separation.

ISSUE 2

¶30 Did the District Court err in its distribution of marital property?

¶31 We review a district court's distribution of marital property to determine whether the findings on which it relied are clearly erroneous. If the findings are not clearly erroneous, we will affirm the distribution of property unless the district court abused its discretion. *See Stufft*, 276 Mont. at 459, 916 P.2d at 770.

¶32 The District Court found that the marital estate consisted of the Bitterroot property, the mobile home, the horse trailer, horses, the Jackson property proceeds, and each party's premarital personal property. The only two substantive assets are the Bitterroot property and the Jackson property proceeds; the value of the remaining assets totals approximately $7300. The District Court also specifically found no evidence that Connie could not obtain gainful and meaningful employment. It then found that an equal division of the marital estate was equitable.

¶33 Connie received the Jackson property proceeds, which had been in her control since she sold the property in 1995. She also received the remainder of the assets, with the exception of John's premarital personal property and the Bitterroot property. The District Court valued Connie's portion of the estate at $45,567.50. It awarded John the Bitterroot property, with equity valued between $39,549 and $44,549.

¶34 Connie contends that an equitable division of the marital estate would have been to award John the one-third of the Wyoming property and the $20,000 acquired after separation, as well as the proceeds of the "Adams property," amounting to $12,500. She contends that she should have been awarded the Bitterroot property, in addition to those assets she received.

¶35 We have already determined that the Wyoming property and the $20,000 were properly excluded from the marital estate. The District Court heard testimony that

the Adams property proceeds were used to satisfy an outstanding obligation on the Jackson property. It also heard testimony from Connie that she could still find employment as a truck driver. In light of her decision to continue training horses, thereby foregoing more gainful employment, and her violation of the court order freezing the Jackson property proceeds, we conclude that the District Court did not abuse its discretion when it awarded John the Bitterroot property.

¶36 We therefore affirm the District Court's distribution of the marital estate.

ISSUE 3

¶37 Did the District Court err by adopting John's proposed findings of fact?

¶38 The District Court adopted many of John's proposed findings of fact and conclusions of law as its own in this case. Connie contends that this is improper. She finds support for her position in our prior decision, *In re Marriage of Beck* (1981), 193 Mont. 166, 631 P.2d 282, wherein we set aside clearly erroneous findings of the district court which were adopted wholesale from one party's proposed findings. However, the findings in *Beck* were set aside because they were clearly erroneous, not because they were identical to one party's proposed findings. *See Beck*, 193 Mont. at 171, 631 P.2d at 285. Since then, we have stated that "[w]ithout a showing that the . . . findings . . . are clearly erroneous . . . they will stand despite 'wholesale adoption.'" *Glasser v. Glasser* (1983), 206 Mont. 82, 83-84, 669 P.2d 685, 688. *See also Stufft*, 276 Mont. at 457, 916 P.2d at 769. Furthermore, our rules specifically provide:

 The court may require any party to submit proposed findings of fact and conclusions of law for the court's consideration and the court may adopt any such proposed findings or conclusions so long as they are supported by the evidence of law of the case.

Rule 52(a), M.R.Civ.P.

¶39 We affirm the judgment of the District Court.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ J. A. TURNAGE

No

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER