No. 92-277

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

IN RE THE MARRIAGE OF
STEPHEN W. TAYLOR,

      Petitioner and Appellant,

  and

JUDITH A. TAYLOR,

      Respondent and Respondent.

FILED

FEB 25 1993

CLERK OF Smith
OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Tenth Judicial District,
In and for the County of Judith Basin,
The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

      Ward N. Ernst, Attorney at Law, Stanford, Montana

    For Respondent:

      Marcia Birkenbuel, Attorney at Law, Great Falls,
Montana

Submitted on Briefs:  September 4, 1992

Decided:  February 25, 1993

Filed:

Clerk

Justice William E. Hunt, Sr., delivered the opinion of the Court.

Appellant Stephen Taylor appeals from a decree of dissolution from the Tenth Judicial District, Judith Basin County, dividing the marital property of the parties.

We affirm.

We present the issues on appeal in the following order:

1. Was the District Court's division of the stock clearly erroneous?

2. Was the District Court's valuation of Stephen's shares of stock clearly erroneous?

3. Did the District Court err by ordering a cash settlement in lieu of distributing Taylor Honey, Inc., shares of stock to Judith?

4. Did the District Court err by awarding attorney fees when they were not pled and no evidence was submitted to determine if attorney fees were required?

The parties were married on May 13, 1974, in Reno, Nevada. Neither party brought assets to the marriage. Two children were born into the marriage. On February 22, 1991, Stephen filed a petition for dissolution. The parties' only disputes in this case concern the value of Stephen's stock in the honey business and the award of attorney fees to Judith.

At the time of the dissolution, Stephen was 40 years old and had a high school education. Judith was 36 years old, had a high school education, and had attended a vo-tech school for one year.

2

Throughout their marriage, Judith was primarily responsible for raising the children and maintaining the home. She worked part-time as a waitress and worked in the family honey business. For the past three years, she was employed by the United States Forest Service, earning approximately $13,750 a year.

In 1982, Stephen's parents formed Taylor Honey, Inc., for the purpose of producing honey. Stephen worked in the business throughout the marriage. It is undisputed that over the years Stephen's parents gifted stock in the business to Stephen and his brother for estate planning purposes. Stephen received a total of 8969 shares, or 25.9 percent of the corporate stock. Stephen never received any dividends from the stock and earns a yearly salary of approximately $27,000. Only Stephen, his parents, and his brother are shareholders in the business. Stephen and his brother actually run the day-to-day affairs of the business, while the parents work as advisors. At the time of trial, Stephen was president of the corporation.

At trial, Stephen testified that the stock he received was worthless. Stephen's father testified with some uncertainty that the value of the corporation ranged from $250,000 to $800,000. Both Stephen and his father testified as to their future business concerns regarding government regulations, and troubles with mites and African bees which could affect the viability of the business.

On the other hand, Stephen's expert testified that the net value of the business was between $458,878 and $646,878. He

3

discounted Stephen's share of the stock by 20 percent because it was a minority share, and valued the stock from $95,000 to $134,033. Judith's expert witness valued the business between $900,000 to $950,000 and valued the stock between $230,000 to $245,000. Financial statements entered into evidence valued the business over the last five years between $1,000,000 and $1,400,000.

In its decree, the District Court valued the corporation at approximately $917,000. The court concluded that as a result, Stephen's 25.9 percent share of stock amounted to $237,500. The court determined that the stock was marital property and awarded Judith a $109,483 cash settlement for her share of the marital estate. The court allowed Stephen the option of paying Judith's share of the marital estate in a cash settlement of four annual installments of $25,000 each, with 10 percent interest and $25,000 down. The court allowed Judith to encumber Stephen's stock if the need arises. The court allowed Stephen to offset his payments on the parties' home mortgage against the $109,483. The court also ordered Stephen to pay Judith's attorney fees. Stephen appeals the decree.

I.

Was the District Court's division of the stock clearly erroneous?

Our standard of review regarding the division of the marital estate has recently changed to the following:

4

> In the past, this Court has employed an abuse of discretion standard in reviewing a lower court's determination of the appropriate division of the marital estate. This Court has recently clarified that our standard of review in regard to the factual findings of the district court relating to the division of martial property is whether the district court's findings are clearly erroneous.

In re Marriage of Danelson (Mont. 1992), 833 P.2d 215, 219, 49 St. Rep. 597, 599.

Section 40-4-202(1)(a)-(b), MCA, requires the court to consider the nonmonetary contributions of a spouse when dividing the marital estate and whether such contributions facilitated the maintenance of the property. The statute also mandates that the court examine whether the division of the marital estate serves as an alternative to maintenance. Section 40-4-202(1)(c), MCA.

Stephen contends that he did not make monetary contributions to the stock, nor did he facilitate the maintenance of the stock. He contends that, as a result, it would have been impossible for Judith to contribute to the value of the stock, and the stock should not be included as part of the marital property. We disagree.

There is substantial evidence to support the court's finding that both Stephen and Judith contributed to the maintenance of the honey business stock. Stephen is a minority shareholder in the company with only four employees. He works 16 hour days, seven days a week, in making the business a going concern. Stephen also takes the bees to California in the fall of each year for

5

approximately two months to pollinate certain crops. In addition, he is the president of the company.

Judith's contributions were of equal importance. She maintained the household and took care of the children for 17½ years. The record reflects that on occasion she also worked for the company. Judith's nonmonetary contributions as a homemaker facilitated the maintenance of the honey business because Stephen would not have been able to devote the considerable time and effort the business required were it not for Judith's caring for the children and the home. The court did not grant Judith a maintenance award and the division of the marital property served as an alternative to maintenance. We hold that the District Court's division of the marital property was not clearly erroneous.

II.

Was the District Court's valuation of Stephen's shares of stock clearly erroneous?

Stephen attacks the District Court valuation of the honey business stock at $237,500. In our review of a district court's valuation of marital property, we have established several principles which guide us. When there is a dispute over property in a marriage dissolution, the district court may assign any value that is within the range of values presented into evidence. In re Marriage of Kramer (1987), 229 Mont. 476, 747 P.2d 865. However, if the values are widely conflicting, then the district court must

6

state its reasons for determining a certain value. In re Marriage of Glass (1985), 215 Mont. 248, 697 P.2d 96.

In this instance, the evidence of the value of Taylor Honey, Inc., ranged from practically zero to $1,400,000. The evidence indicated the value of Stephen's shares ranged from zero to $245,000. The court valued Stephen's shares at $237,500. Apparently, the District Court averaged the high and low figures offered by Judith's expert to arrive at $237,500. This value falls within the ranges presented at trial.

In addition, the court gave its reasons for its valuation, stating that it believed the family's fear of African bees and mites was merely speculation and did not pose a current threat which would reduce the value of the business. In addition, the court stated that it also considered the company's financial statements, which presented a higher valuation of the corporation than those presented by the parties' expert witnesses.

Stephen also maintains that the District Court did not take into account all of the company's liabilities. Specifically, he charges that the court failed to take into account tax liabilities that he would incur because he would be forced to sell his shares of stock in order to make the necessary cash payments for Judith's share of the marital estate. We held in In re Marriage of Lee (1991), 249 Mont. 516, 519, 816 P.2d 1076, 1078, that the court must take into account tax liabilities for a court ordered distribution which results in a taxable event that precipitates a

7

"concrete and immediate tax liability." Unlike Lee, no evidence was introduced at trial relating to a concrete and immediate tax liability that Stephen might incur if he were to sell his shares of stock. In addition, there was no evidence introduced at trial that Stephen would have to sell his stock in order to pay any cash award to Judith, nor was he ordered to do so by the court.

Stephen also contends that the District Court did not properly discount the value of his stock because he is a minority share holder. Stephen's expert witness discounted Stephen's shares of stock 20 percent because he was a minority shareholder. On the other hand, Judith's expert did not apply any discount to the value of the stock. The expert explained that he did not apply a discount to Stephen's shares because he was basing his values on the corporation's underlying assets and not on the market value of the stock. We have stated that it would be inappropriate to discount stock when the value of the corporation was arrived at by determining the market value of the underlying assets. In re Marriage of Buxbaum (1984), 214 Mont. 1, 8, 692 P.2d 411, 414.

Finally, Stephen argues that the court failed to take into account the debentures issued to Stephen's parents as a formal debt of the corporation. The record indicates that the debentures were not consistently reported in financial statements, nor did the corporation pay these debts on a regular basis. Therefore, they did not constitute a formal debt of the corporation. We hold that

8

the District Court's valuation of Stephen's shares of stock in Taylor Honey, Inc., was not clearly erroneous.

### III.

Did the District Court err by ordering a cash settlement in lieu of distributing Stephen's shares of stock to Judith?

Stephen assails the District Court's order requiring a cash settlement. He contends that after paying child support, he is left with only $14,796 to meet the rest of his obligations under the order, as well as his own living expenses. The record reveals that Taylor Honey, Inc., is a closely held family corporation. Only Stephen, his brother, and their parents have shares in the corporation. Stephen and his brother control the day-to-day operation of the business, plus they also determine when to pay dividends to stockholders. The corporation has not paid dividends since its inception, nor is it expected to pay dividends in the future. If Judith were to receive an in-kind distribution of stock, she would not likely receive any benefits. In In re Marriage of Johnson (1986), 223 Mont. 383, 726 P.2d 322, we were faced with a similar factual situation. In that case, we held that it was proper for the District Court to award a cash settlement in lieu of an in-kind distribution of stock where the spouse was part of a closely held family corporation. Johnson, 726 P.2d at 324. We hold that the District Court did not err by ordering a cash settlement in lieu of distributing shares of stock.

9

IV.

Did the District Court err by awarding attorney fees when they were not pled and no evidence was submitted to determine if attorney fees were required?

Stephen maintains that the court's award of attorney fees was in error because Judith did not request attorney fees in the pleadings and no evidence was presented to determine if an award of attorney fees was necessary.

Section 40-4-110, MCA, grants the district court the discretion to award reasonable attorney fees after considering the financial resources of both parties. Absent an abuse of discretion, this Court will not overturn the district court's decision denying attorney fees. In re Marriage of Manus (1987), 225 Mont. 457, 733 P.2d 1275. We have stated that although the statute does not specifically require that attorney fees be pled, it would be good practice to so. In re Marriage of Johnsrud (1977), 175 Mont. 117, 572 P.2d 902.

Judith did not request attorney fees in her pleading. However, at the end of her complaint she did request "for such further relief as the Court deems just and proper." In a recent case, we held that such language allowed the District Court to grant a larger maintenance award than that pled by the wife. In re Marriage of Eide (1991), 250 Mont. 490, 821 P.2d 1036. We concluded that Rule 54(c), M.R.Civ.P., provided:

10

> Except as to a party against whom a judgment is entered by default, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

Eide, 821 P.2d at 1039. Rule 54(c), M.R.Civ.P., grants the district court discretion which must be viewed according to the circumstances of the case. Eide, 821 P.2d at 1039.

In its findings, the court considered the financial resources of the parties and concluded that Stephen should pay Judith's reasonable attorney fees. We hold that the District Court did not err in awarding reasonable attorney fees to Judith.

We affirm.

_____
Justice

We concur:

_____

_____

_____
Justices

11

Justice Terry N. Trieweiler concurring in part and dissenting in part.

I concur with the majority's conclusions that it was reasonable to include Stephen's stock in the marital estate and divide it between the parties; the District Court's valuation of the stock was not clearly erroneous; and the District Court did not err by awarding attorney fees, even though they were not specifically sought by the pleadings.

I dissent from the part of the majority opinion which affirms the District Court's judgment ordering that a cash settlement be paid to Judith in lieu of her share of the marital estate's stock in Taylor Honey, Inc.

I conclude that the only reasonable way to distribute the value of the stock is an in-kind distribution. If the stock has a marketable value, then Judith can sell it as well as Stephen. If the stock is not marketable, then Stephen cannot convert it to cash any more than Judith, and there was no evidence that he had any other assets, nor sufficient income with which to pay Judith $109,000 in cash at the rate of $25,000 per year.

Excluding the shares in Taylor Honey, Inc., Stephen was awarded property from the marital estate with a net value of $2876. There was no evidence that he had any other property.

His net yearly income, after payment of federal and state taxes, is $21,538. However, from that income he has a yearly child support obligation of $6742, leaving him approximately $14,000 per year with which to pay all of his living expenses.

12

The family residence was awarded to Judith, so presumably Stephen will have to pay for other living arrangements out of the remaining disposable income that he has.

Only four witnesses testified regarding the value or transferability of the stock in the family business. Both Stephen and his father testified that there was no market for the stock.

Stephen's expert witness, Dan Vuckovich, testified that he doubted the stock was marketable. Even Judith's expert, Nicholas Bourdeau, denied that he had come to any conclusion that the stock could be sold.

The predicament in which Stephen is left by the District Court's judgment is compounded by the fact that the District Court accepted the appraisal from Judith's expert, which was based on the value of the business assets. The only way for Stephen to obtain the cash with which to satisfy the District Court's decree would be to sell the business assets, or some portion of them. There was no evidence that the business could continue to generate the kind of income which is necessary for Stephen to pay child support and his own living expenses if he is forced to sell off some of the assets which are necessary to generate business income.

Maybe the majority and the District Court are aware of some means by which Stephen can raise $25,000 a year to satisfy the District Court decree and still meet his child support obligation and pay his own living expenses. However, I have been unable to make that determination from anything that is found in the record on appeal.

13

Therefore, I conclude that there was no substantial evidence to support the District Court's judgment that $109,000 in cash should be paid to Judith in lieu of her interest in the stock in Taylor Honey, Inc., that was included in the marital estate. I would reverse that part of the District Court judgment and remand for purposes of amending the decree to award Judith the appropriate number of shares in the family corporation.

_____
Justice

February 25, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Ward N. Ernst
Attorney at Law
P.O. Box 559
Stanford, MT  59479

Marcia Birkenbuel
Attorney at Law
613 Strain Bldg.
Great Falls, MT  59401

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy