No. 98-643

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 321

297 Mont. 290

994 P.2d 1

---

IN RE THE MARRIAGE OF

ROBERTA M. HALL HARPER,

Petitioner and Appellant,

v.

RONALD RAY HARPER,

Respondent and Respondent.

---

APPEAL FROM: District Court of the Seventh Judicial District,

In and for the County of Richland,

The Honorable Richard G. Phillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Diane E. Savage, Habedank, Cumming, Best & Savage, Sidney, Montana

For Respondent:

Peter O. Maltese, Sidney, Montana

_____

Submitted on Briefs: May 13, 1999

Decided: December 22, 1999

Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

1. ¶ Roberta M. Hall Harper (Bobbie) appeals from the Findings of Fact, Conclusions of Law and Decree of Dissolution of the Seventh Judicial District Court, Richland County, dissolving the marriage of Bobbie and Ronald Ray Harper (Ron) and equitably dividing the parties' marital assets and debts. We affirm.

## Issues Presented

2. ¶ Bobbie raises three issues on appeal:

3. ¶ (1) Did the District Court err in refusing to award Bobbie an equitable portion of the value of Ron's stock shares in the closely-held family corporation?

4. ¶ (2) Did the District Court abuse its discretion in refusing to award Bobbie maintenance in lieu of marital property?

5. ¶ (3) Did the District Court abuse its discretion in refusing to award Bobbie the full amount of her attorney's fees?

## Factual and Procedural History

6. ¶ Ron and Bobbie were married on June 25, 1966. They remained married for nearly 32 years, residing for most of that time period in Sidney, Montana. At the time of trial, Bobbie was 52 years old and Ron was 53. Ron and Bobbie have five children, all of whom had attained the age of majority at the time of dissolution. Both parties are of good health. Ron and Bobbie each have college educations.

7. ¶ Bobbie did not work outside of the family home for the first seven years of the marriage, during which time she was exclusively a homemaker and cared for the parties' children. Then, for a period of years, Bobbie worked part-time as an assistant teacher and continued to function as a homemaker with the remainder of her time. For about the past ten to twelve years, Bobbie has been employed full-time as a teacher for the Sidney Senior High School. While Bobbie was employed part-time or full-time, Ron contributed to child-rearing and maintaining the family home. However, Bobbie testified that even when she was working full-time outside of the family home, her "principal role was that of homemaker and caring for . . . [the] children and the home."

8. ¶ At the time of trial, Bobbie earned $31,445 annually, grossing $2,853.12 and netting $1,904.49 in monthly salary. Bobbie also receives medical insurance through her teaching employment, although she contributes $59.82 a month towards the health insurance premium. Bobbie's employer also makes monthly contributions to the teachers' retirement program, and a total of $64,000 had been contributed to Bobbie's retirement fund as of the date of dissolution.

9. ¶ At the time of trial, Ron had multiple sources of income, earning between $35,000 and $45,000 per year. Ron's earnings stem from his work as a real estate salesman (approximately $10,000 per year), an appraiser (approximately $5,000 per year), a real estate property manager (approximately $2,500 per year), an employee of the family corporation performing cattle feeding and other ranching functions (approximately $12,000 per year), rental income from commercial and residential

real estate (approximately $7,000 per year), and other miscellaneous sources of income. At the time of trial, Ron's net monthly income was approximately $2,500 to $3,000, exclusive of gambling revenues.

10. ¶ Ron, as a shareholder of the Sub-Chapter S family corporation, the Sidney Oil Company (Sidney Oil), also receives some annual dividend income. However, that dividend income is passed through to the shareholders only in an amount necessary to offset any personal income taxes owed by the shareholders, such that, following the payment of taxes, Ron receives little to no additional income from the dividends. Ron receives no health insurance or retirement benefits through his various modes of employment, although he testified at trial that his stock shares in the family corporation are a "form of retirement."

11. ¶ The District Court found that Ron and Bobbie possessed little property at the time of marriage and, therefore, "that substantially all of the property [was] acquired by the parties during the time of the marriage." In this respect, a hotly disputed property interest is 935 shares of stock in Ron's name in the closely-held family corporation, Sidney Oil, incorporated in 1977. Sidney Oil consists of a retail and wholesale gasoline business, a mechanic's shop, and a farm and cattle ranching operation. Originally, all of the corporate stock was owned by Ron's parents; the shareholders are now Ron's parents, Ron, his two brothers, and a sister. Ron is a corporate vice-president, and he functions in both a managerial and labor capacity with respect to the corporation's cattle ranching operation, devoting a majority of his time every year to such ranching activities. For his "contract services," Ron receives income "as needed," rather than a set monthly salary.

12. ¶ Ron's parents began gifting him shares of stock in the family corporation approximately ten years after the couple was married. The first gift of Sidney Oil stock occurred on December 31, 1976, when Ron received sixty shares of stock. Thereafter, Ron received an additional sixty shares of corporate stock from his parents each succeeding year through 1980, by which time Ron had accumulated 300 shares of stock. There was then a hiatus in the gift-giving for roughly nine years. In 1989, the gifting of stock resumed, and Ron continued to receive stock gifts from his parents through 1996. Today, Ron owns 935 shares in Sidney Oil, which constitutes 23.9% of the 3,900 issued and outstanding shares of the corporation.

13. ¶ The District Court found and valued the real property interests of the parties as follows: the family home ($113,500), a one-half interest in the Meridian Building ($38,500), the blue rental house ($30,000), two surveyed lots and adjoining acreage ($5,500), the Concrete Building ($10,000), and a one-fifth undivided interest in Big

Sky Condo ($24,000). As to the parties' real estate, the court found that the following marital debts exist: approximately $7,500 owed on the family home; approximately $2,000 owed on the Concrete Building; and approximately $4,500 owed against the surveyed lots and acreage.

14. ¶ The District Court further found and valued the parties' personal property interests as follows: 935 shares of Sidney Oil corporate stock, valued at $319,000 based solely on the value of the underlying assets owned by the corporation; $64,000 in a vested retirement pension in Bobbie's name in the Montana State Teachers' Retirement System; and a negligible amount of savings, as well as miscellaneous household furnishings, appliances, and personal property.

15. ¶ In equitably dividing the marital property, the District Court found that:

[I]t would be equitable to divide the property so that [Bobbie] receives the house and all of her teachers' retirement fund together with the savings and such personal property located in the house as she wishes to keep. All of the remainder of the property, being the business real estate, undivided interest in the condominium and the corporate stock, should be received by [Ron. Bobbie] should be responsible for payment of her credit card debt and doctor bills. [Ron] should be responsible for payment of the debt owed against the personal residence, any debt owed against the property he is receiving and any of his personal debts, including any alleged debts owed to Sidney Oil Company, Inc.

16. ¶ Thus, although the District Court found that "the parties own 935 shares of . . . corporate stock which has a value of approximately $319,000 based solely on the value of assets owned," it declined to award Bobbie any share of the value of Ron's stock shares in the family corporation. The court reasoned thus:

In determining the distribution of property, the Court considers that the house has significant value. However, it is not an income-producing property; [Bobbie], through her labors, has earned the retirement benefits of the teacher's retirement fund; that the stock certificates in Sidney Oil Company, Inc. were gifted to [Ron] and not to [Bobbie and Ron] jointly; that [Bobbie] has had no involvement in the corporation nor is there any evidence that her work, either as a teacher or as a homemaker and mother, has contributed in any significant fashion to an increase in value of the Sidney Oil Company, Inc. stock; that the other real estate (except for the condo unit) are income-generating properties upon which [Ron] relies to earn his living while [Bobbie] has a full-time teaching job upon which she relies to earn her

living; that [Ron's] past income appears to have been greater than the income of [Bobbie], and so it is equitable that he should pay off the remaining debt against the personal residence . . . .

In its dissolution decree, the District Court also awarded Bobbie $3,500 in attorney's fees, $2,500 of which was intended to cover the costs incurred by Bobbie in forcing Ron to comply with discovery requests during trial.

## Standard of Review

17. ¶ In assessing an equitable apportionment of the marital estate, this Court reviews a district court's findings of fact to determine whether the findings on which the court relied are clearly erroneous. In re Marriage of Stufft (1996), 276 Mont. 454, 459, 916 P.2d 767, 770. We review a trial court's conclusion of law relating to the division of marital property to determine whether those conclusions are correct. In re Marriage of DeCosse (1997), 282 Mont. 212, 217, 936 P.2d 821, 824. Notwithstanding the foregoing standards of review,

this Court is not in any way discounting the considerable discretionary power that must be exercised by district courts in these cases. The courts are obligated to fashion a distribution which is equitable to each party under the circumstances. In re Marriage of Jones (1987), 229 Mont. 128, 745 P.2d 350; § 40_4_202, MCA. The courts, working in equity, must seek a fair distribution of the marital property using reasonable judgment and relying on common sense. Obtaining this equitable distribution will at times require the lower court to engage in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments made by the trial court are presumed to be correct and will not be disturbed by this Court absent an abuse of discretion by the lower court. Meridian Minerals v. Nicor Minerals, Inc. (1987), 228 Mont. 274, 742 P.2d 456.

In re Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 219-20.

18. ¶ In short, "it is not the function of this Court to conduct de novo determinations of equity." In re Marriage of Luisi (1988), 232 Mont. 243, 246, 756 P.2d 456, 458. Therefore, if the findings are supported by substantial credible evidence, we will affirm the district court unless the court abused its discretion in equitably dividing

the marital estate. In re Marriage of Hogstad (1996), 275 Mont. 489, 496, 914 P.2d 584, 588. Other standards of review will be set forth as necessary.

## Discussion

19. ¶ (1) Did the District Court err in refusing to award Bobbie an equitable portion of the value of Ron's stock shares in the closely-held family corporation?

20. ¶ In the dissolution decree, the District Court found that all of the 935 shares of Sidney Oil stock owned in Ron's name were acquired during the course of the parties' 32-year marriage by periodic parental gifting. However, the court declined to include Ron's stock shares in the marital estate, finding that Bobbie had not been involved in the day-to-day operations of the family corporation, and that her role as a "teacher or as homemaker and mother" had not "contributed in any significant fashion to an increase" in the stock's value.

21. ¶ Following issuance of the dissolution decree, Bobbie moved the District Court to amend its decree. In part, Bobbie challenged the District Court's award of the corporate stock to Ron, arguing that she should have been entitled to an equitable share of the "asset value" of the corporate stock as marital property. The District Court rejected her challenge:

While the Court agrees with [Bobbie] as to the value of the underlying assets of the corporate stock . . . , the Court also considered that the corporate stock was gifted property. . . . In this case the Court did consider [whether Bobbie made non-monetary contributions to the marriage which facilitated the maintenance of the corporate stock. Bobbie] in this case was not a ranch wife, and [Ron's] work for Sidney Oil was only a part of his overall employment. [Ron's] employment for Sidney Oil played no part in the stock acquisition as gifts were made to all the children whether they worked for the corporation or not on a fairly equal basis, and the ranch itself is only one part of the corporation's business. Given all of these contributing factors, the Court concluded that [Bobbie's] efforts had little or no effect on maintenance and improvement of the value of the stock and, accordingly, the Court did not consider the stock as a marital asset.

22. ¶ Bobbie contends that the District Court's finding that she did not contribute as a homemaker and child-care provider to the maintenance of the stock value is clearly erroneous because her contributions enabled Ron to devote the "bulk of his time" to the cattle ranching operation of the family corporation, thus enabling him to not

only maintain but increase the value of his stock shares. Bobbie maintains that this error resulted in a "grossly inequitable" division of marital property.

23. ¶ In support of her position, Bobbie points to her testimony at trial:

I was the homemaker. I cared for the children, I cared for the house. . . . I didn't work the first seven years or so. I cared for the first two children and worked part-time with the last three and then worked full-time later, but my principal role was that of a homemaker and caring for that part of the family, children and the home.

24. ¶ Bobbie further points to Ron's testimony at trial, which corroborates her testimony:

Q: Throughout your marriage to Bobbie had you recognized that she contributed throughout the marriage as homemaker, managed the house?

A: Yes.

Q: And throughout the marriage on a day-to-day basis until she taught and those days of teaching that took her away from the hours at home, that primarily she was the one at home on a twenty-four-hour-a-day basis with the children?

A: For that time period, yes.

25. ¶ At trial, Ron also testified that he put in "[a]pproximately twenty-five hundred hours" to "thirty-five hundred hours per year" toward his duties for Sidney Oil. In light of this testimony, Bobbie maintains that had she not been primarily attending to the children all those years that Ron was putting in thousands of hours annually for the family corporation, it would have been impossible for Ron to devote the substantial time necessary to the successful management of his stock ownership interest in Sidney Oil.

26. ¶ In essence, Bobbie claims that the District Court erroneously disregarded her substantial nonmonetary contributions as a homemaker, and the extent to which those contributions facilitated the maintenance of the value of Ron's stock shares. Thus, Bobbie argues that she should be entitled to an equitable portion of the value of that gifted interest. Section 40-4-202, MCA, sets forth the statutory guidelines for equitable apportionment of marital property and provides in relevant part that:

(1) In a proceeding for dissolution of a marriage, . . . the court, without regard to marital misconduct, shall . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. . . . In dividing . . . property acquired by gift, . . . the court shall consider those contributions of the other spouse to the marriage, including:

(a) the nonmonetary contribution of a homemaker;

(b) the extent to which such contributions have facilitated the maintenance of this property; and

(c) whether or not the property division serves as an alternative to maintenance arrangements.

Section 40-4-202(1)(a), (b), (c), MCA.

27. ¶ This Court has recently clarified that:

[G]ifted property need not be included in the marital estate <u>unless the nonacquiring spouse contributed to its preservation or appreciation</u>. In that event, we have held that the nonacquiring spouse is entitled to an equitable share of the appreciated or preserved value which is attributable to his or her efforts. [Emphasis added.]

In re Marriage of Engen, 1998 MT 153, ¶ 29, 289 Mont. 299, ¶ 29, 961 P.2d 738, ¶ 29; <u>see also</u> In re Marriage of Foreman, 1999 MT 89, 294 Mont. 181, 979 P.2d 193.

28. ¶ Recognizing the foregoing rule, Bobbie claims on appeal that her contributions as a homemaker actually <u>increased</u> the value of Ron's stock shares because those siblings who work for the family corporation receive relatively greater gifts of stock than those siblings who do not contribute their labor to Sidney Oil. Bobbie relies on the testimony of Ron's brother Bill, the president of Sidney Oil, who stated that the present family ownership of the corporation on the basis of stock shares is as follows: Bill owns approximately 40%; Ron owns approximately 25%; the other two siblings each own approximately 10%; and the parents own the remainder. Bobbie reasons that the minimal monetary compensation that Ron receives relative to the number of hours per year devoted to Sidney Oil (approximately $12,000 in

annual salary for at least an estimated 2,500 hours of work) supports an inference that the siblings employed by the family corporation receive a greater number of shares in Sidney Oil than those siblings who do not work for the corporation. Bobbie suggests that this pattern of "disparate gifting" is really a form of "deferred compensation" or "future compensation" for the long hours that Ron devotes to the family corporation and, thus, that her homemaking contributions effectively enabled Ron to increase the number of Sidney Oil shares that he owns.

29. ¶ Bobbie relies on In re Marriage of Davies (1994), 266 Mont. 466, 880 P.2d 1368; In re Marriage of Taylor (1993), 257 Mont. 122, 848 P.2d 478; and Larson v. Larson (1982), 200 Mont. 134, 649 P.2d 1351. In Marriage of Davies, this Court held that since there was substantial evidence that the wife had "spent 19 years performing the duties generally associated with those of a ranch wife," she was entitled to an equitable portion of the cash value of the husband's gifted and inherited stock in two closely-held ranching corporations. Marriage of Davies, 266 Mont. at 476, 880 P.2d at 1374. We determine that Marriage of Davies is distinguishable because, as Ron points out, the wife in that case was a classic "ranch wife" who performed numerous tasks as a "ranch hand" in addition to her duties as a homemaker. See Marriage of Davies, 266 Mont. at 474, 880 P.2d at 1373-74. The District Court found that Bobbie did not perform any tasks associated with the cattle ranching operation of Sidney Oil. Thus, she is not a "ranch wife" within the meaning of Marriage of Davies.

30. ¶ In Marriage of Taylor, the husband had been gifted a minority shareholder interest in a honey-producing family corporation. The husband worked "16 hour days, seven days a week, in making the business a going concern." Marriage of Taylor, 257 Mont. at 126, 848 P.2d at 480. The trial court equitably divided the value of the husband's honey business stock in its dissolution decree. On appeal, the husband argued that the court erred in including any of the value of the stock in the marital estate since he neither made any "monetary contributions to the stock, nor did he facilitate the maintenance of the stock." As a result, the husband claimed that "it would have been impossible for [the wife] to contribute to the value of the stock . . . ." Marriage of Taylor, 257 Mont. at 126, 848 P.2d at 480. This Court rejected the husband's contention:

[The wife's] contributions were of equal importance. She maintained the household and took care of the children for 17½ years. The record reflects that on occasion she also worked for the company. [The wife's] nonmonetary contributions as a homemaker facilitated the maintenance of the honey business because [the husband]

would not have been able to devote the considerable time and effort the business required were it not for [the wife's] caring for the children and the home. [Emphasis added.]

Marriage of Taylor, 257 Mont. at 126, 848 P.2d at 480.

31. ¶ In Larson, we employed similar reasoning in concluding that the trial court erred in refusing to include the husband's "unified ranching operation" in the marital estate. In that case, the husband managed the ranch while the wife "cared for the children . . . and the home," as well as "occasionally help[ing] out with small ranch chores and errands." Larson, 200 Mont. at 137, 649 P.2d at 1353. The trial court, while finding that the wife "contributed 'services of a domestic nature' during the marriage," refused to include the ranch property in the marital estate since the wife's contributions to the marriage were not rendered in the ranch context. This Court disagreed:

Though [the wife's] homemaking services and nonmonetary contributions may not have been rendered in the ranch context, they nevertheless continued as [the wife] had custody and primary responsibility for the physical and emotional needs of the parties' minor children. This no doubt facilitated [the husband's] ability to maintain his employment and ranch responsibilities as he was not required to take time from these activities to ensure that the children's basic needs were being met. [Emphasis added.]

Larson, 200 Mont. at 141-42, 649 P.2d at 1355.

32. ¶ Bobbie argues that the same result as Marriage of Taylor and Larson should obtain here, because her nonmonetary contributions as a homemaker enabled Ron to devote a majority of his time to the cattle ranching operation of the Sidney Oil enterprise without having to take time from his corporate duties to ensure that the children's basic needs were being met. We disagree. In both Marriage of Taylor and Larson, the record showed that the wife had been responsible for raising the children and maintaining the home, but there was no evidence that the husband had contributed to or shared in these duties.

33. ¶ In contrast to Marriage of Taylor and Larson, the record in this case shows that Bobbie was "primarily involved" in child-rearing during the parties' marriage, especially during the first seven years of the couple's union when she did not work

outside of the family home, but that Ron contributed significantly to homemaking duties and the children's upbringing later in the marriage when Bobbie entered the workforce. While Ron did not dispute that child-rearing duties were never "split . . . fifty-fifty" between the couple, he testified that he actively participated in the raising of the parties' children over the years. Ron stated that this was particularly true once Bobbie began to work outside of the family home, during which time he assumed more significant child-rearing duties. Specifically, Ron testified that when Bobbie began to teach full-time, the child-rearing "duties had to be split." Bobbie's testimony, in turn, acknowledged that Ron "made contributions" to child-rearing.

34. ¶ As Ron points out, the first 300 of his 935 Sidney Oil shares were gifted between 1976 and 1980, when Bobbie was working outside of the family home on a part-time basis and Ron began sharing in the parties' child-rearing duties; the remaining two-thirds of Ron's shares were gifted from 1989 to 1996, during which time Bobbie taught on a full-time basis and Ron assumed substantial child-rearing duties. Notably, none of the stock shares were gifted to Ron during that period when Bobbie was exclusively a homemaker; all of the stock shares were gifted when Bobbie and Ron <u>shared</u> child-rearing duties, albeit not equally. Furthermore, there is substantial evidence supporting the District Court's findings that Ron's work for Sidney Oil was "only a part of his overall employment," and that the cattle ranching operation constituted but a part of the corporate enterprise. Under these circumstances, Bobbie's nonmonetary contributions as a homemaker cannot be said to have enabled Ron to maintain the value of the stock. Thus, the "preserved value" of the shares cannot be said to be "attributable to . . . her efforts." <u>Marriage of Engen</u>, ¶ 29.

35. ¶ Nor do we agree with Bobbie that the record shows that she, as the nonacquiring spouse, contributed to the "appreciation" of the stock's value. <u>Marriage of Engen</u>, ¶ 29. This Court has made it " 'clear that speculation, conjecture, inference, or guess do not constitute credible factual evidence.' " <u>Marriage of Foreman</u>, ¶ 37 (quoting In re Marriage of Maedje (1994), 263 Mont. 262, 267, 868 P.2d 580, 584). While the record might support an inference that gifting of stock was a form of "deferred" or "future" compensation for Ron's labors, we cannot say, without more, that the District Court's finding that the Sidney Oil stock was gifted to all the Harper children "on a fairly equal basis" is clearly erroneous.

36. ¶ In evaluating whether preacquired or gifted property should be included in the marital estate pursuant to § 40-4-202, MCA, a district court is <u>required</u> to consider the contributions of the nonacquiring spouse, including the nonmonetary contributions of a homemaker. <u>Marriage of Davies</u>, 266 Mont. at 473, 880 P.2d at

1373. In this case, the District Court did just that. Moreover, it is important to keep in mind that the statute vests a trial court with "far-reaching discretion to fashion 'a fair distribution of the marital property using reasonable judgment and relying on common sense.' " Marriage of Foreman, ¶ 23 (quoting In re Marriage of Rock (1993), 257 Mont. 476, 480, 850 P.2d 296, 298; Marriage of Danelson, 253 Mont. at 317, 833 P.2d at 220); see also Marriage of Davies, 266 Mont. at 473, 880 P.2d at 1373 (the "statute grants the district court broad discretion"). Therefore, where the nonmonetary contributions of a homemaker are found to have facilitated the maintenance of preacquired or gifted property, the court "may" include that property in the marital estate. Marriage of Davies, 266 Mont. at 473, 880 P.2d at 1373. However, as we have noted, "[i]n the absence of a significant contribution on the part of the non-acquiring spouse, the court remains free to exclude [gifted] assets or property from the marital estate." Marriage of Luisi, 232 Mont. at 245, 756 P.2d at 458 (emphasis added).

37. ¶ The District Court's finding that Bobbie had not "contributed in any significant fashion" to the stock's increase in value is supported by substantial credible evidence in the record; nor is there any indication that the court misapprehended the effect of the evidence or otherwise committed a mistake in making that finding. See Interstate Production Credit Ass'n v. DeSaye (1991), 250 Mont. 320, 323, 820 P.2d 1285, 1287 (setting forth a three-part test for determining whether a finding is clearly erroneous). We hold that the District Court's findings of fact regarding Bobbie's nonmonetary contributions as a homemaker are not clearly erroneous. We further hold that the court properly applied § 40-4-202, MCA, and fairly concluded that the value of Ron's gifted stock shares should not be included in the marital estate. In so holding, it becomes unnecessary for this Court to address the parties' contentions pertaining to the appropriate valuation of the stock.

38. ¶ In light of our conclusion that the District Court correctly excluded Ron's stock from the marital estate, Bobbie's claim of a "grossly inequitable" property distribution is baseless. In fact, once excluding the "asset value" of the shares from the marital estate, it becomes apparent that Bobbie was granted a more favorable property distribution than Ron. As Bobbie requested, the District Court granted her the family home. The family home is an asset which, as the District Court noted, "has significant value" even though it is "not an income-producing property." To ensure that Bobbie would receive the full value of that asset, the court ordered that Ron be responsible for the remaining $7,500 debt on the family home, and granted Bobbie a "security interest" in Ron's Sidney Oil stock "to secure payment of the residential debt in a timely fashion." The court allocated to Ron the remainder of the

parties' real estate which, although "income-generating properties," are relied on in part by Ron "to earn his living." The total value of the real estate allocated to Ron ($108,000) is nearly commensurate with the value of the family home awarded to Bobbie ($113,500). And, in recognition of Ron's relatively greater historical earning power, the District Court allocated nearly all of the parties' marital debt to Ron.

39. ¶ On balance, the property distribution was fair and equitable under the circumstances. As noted previously, the discretionary judgments which a trial court must make in equitably dividing a marital estate are entitled to a presumption of correctness. See Marriage of Stufft, 276 Mont. at 459, 916 P.2d at 770. The test for abuse of discretion in a marriage dissolution proceeding is whether the trial court "acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice." Marriage of Engen, ¶ 26. Bobbie has simply failed to show that the District Court acted arbitrarily without employment of conscientious judgment or exceeded the bounds of reason resulting in substantial injustice to her. Thus, we hold that the District Court did not abuse its discretion in equitably dividing the parties' marital estate.

40. ¶ (2) Did the District Court abuse its discretion in refusing to award Bobbie maintenance in lieu of marital property?

41. ¶ Regarding maintenance, the District Court found as follows: "Since each of the parties is gainfully employed and able to support himself or herself, the Court finds that there is insufficient grounds upon which to base an award of maintenance." Bobbie contends that if this Court declines to award her a share of the value of Ron's Sidney Oil stock, then we should, in the alternative, hold that she is entitled to maintenance since her monthly expenses substantially exceed her monthly income. Ron counters that Bobbie's monthly expenses were shown through cross-examination to be trumped-up estimates, rather than actual costs, and that he does not have the financial ability to pay maintenance given the large debt that he assumed under the District Court's dissolution decree.

42. ¶ Bobbie relies on Marriage of Luisi to argue that she should be entitled to maintenance. In that case, this Court said:

The term "sufficient property," as used in § 40-4-203, MCA, has been interpreted by this Court to mean income producing property. . . . [The statute] mandates that an award of maintenance is appropriate when a spouse is unable to achieve a similar standard of living after dissolution, and the other spouse is able to meet his or her own needs as well as pay maintenance.

Marriage of Luisi, 232 Mont. at 248, 756 P.2d at 459-60. Bobbie effectively asserts that the statute "mandates" an award of maintenance should this Court decline, as we have done, to award her a portion of the value of Ron's stock shares.

43. ¶ However, in Marriage of Luisi, we also noted that:

[T]he practical reality of the myriad of diverse factual situations confronted by district courts often precludes strict adherence to the policy regarding maintenance while achieving the overriding goal of an equitable dissolution. Consequently, the court must first equitably distribute the marital property. Any additional needs of a spouse are then addressed through maintenance.

Marriage of Luisi, 232 Mont. at 247, 756 P.2d at 459.

44. ¶ As discussed under issue one, the property distribution in this case was equitable. Although the family home is not, as the District Court recognized, an income-producing property, it is an asset with substantial value. Ron's payment of the remaining debt on the family home is secured to ensure that Bobbie gets the full value of that asset. Should Bobbie need income above and beyond that provided by her monthly salary, she is free to sell the large, multi-bedroom family home to meet her financial needs. Turning to the question of maintenance, then, the District Court properly concluded that Bobbie does not have any "additional needs" justifying an award of maintenance. She is gainfully employed as a tenured teacher, earning close to the same monthly income as Ron. However, since Ron has historically had a slightly larger monthly income than Bobbie, the court sensibly ordered that he be responsible for most of the marital debt.

45. ¶ Although Bobbie claims that an "additional resource" supporting an award of maintenance is Ron's "acknowledged gambling revenue," we agree with Ron that the record is unclear as to what extent, if any, his gambling earnings actually exceeded his losses. We further agree with Ron that the record does not support Bobbie's claim that her monthly expenses far exceed her monthly income. Rather, there is every indication that Bobbie will be able to achieve a standard of living similar to that she enjoyed while married to Ron. By the same token, there is no indication that Ron could afford to meet his own needs as well as pay maintenance to Bobbie. We hold that the District Court did not abuse its discretion in declining to award maintenance.

46. ¶ (3) Did the District Court abuse its discretion in refusing to award Bobbie the full

amount of her attorney's fees?

47. ¶ As this Court has noted, an award of attorney's fees in marital dissolution actions is "clearly permissive" under § 40-4-110(1), MCA. In re Marriage of McLean (1993), 257 Mont. 55, 63, 849 P.2d 1012, 1017. Therefore, absent an abuse of discretion, this Court will not overturn a district court's decision regarding attorney's fees. In re Marriage of Lee (1997), 282 Mont. 410, 423, 938 P.2d 650, 658.

48. ¶ Bobbie argues that the court's award of $3,500 in attorney's fees is essentially "a denial of attorney fees" in this case, since she established at trial that she had incurred $9,168 in fees and since $2,500 of the fees awarded by the District Court were directly associated with the court's earlier order levying discovery sanctions against Ron. We disagree with the construction of Bobbie's argument, which goes something like this: since the District Court awarded her only $1,000 towards her $9,000-plus debt in attorney's fees, the court's award was an effective denial of attorney's fees; that, in cases of denied fees, the court must indicate its reason for such refusal; and, therefore, that the District Court erred in the instant case by failing to indicate in its findings of fact why it declined to award her attorney's fees. See generally In re Marriage of Perry (1985), 217 Mont. 162, 704 P.2d 41.

49. ¶ As Ron correctly indicates, Bobbie's argument misses the mark because the District Court did not decline to award attorney's fees; it simply declined to award her the full amount of her fees. In its order subsequent to the dissolution decree, prompted by Bobbie's motion to amend, the District Court denied Bobbie's request to increase her award of attorney's fees:

The amount of attorney's fees contribution is based upon what the Court in its discretion considers fair. In reaching that decision the Court considered the work involved and the resources of both parties, and the Court is satisfied with the amount that has been ordered to be contributed.

50. ¶ This Court is also satisfied with the amount of attorney's fees awarded. Section 40-4-110, MCA, directs that a court "may" award attorney's fees "after considering the financial resources of both parties." Section 40-4-110(1), MCA; In re Marriage of Walls (1996), 278 Mont. 413, 420-21, 925 P.2d 483, 487. The District Court properly considered Ron's ability to pay a large award of attorney's fees in light of the substantial debt that he assumed under the dissolution decree. Furthermore, the record shows that Bobbie's counsel testified and was cross-examined as to the nature and difficulty of work involved in this case. We cannot say, and Bobbie has not demonstrated, that the District Court in any way abused its discretion. We hold that

the District Court did not abuse its discretion in awarding Bobbie $3,500 in attorney's fees.

51. ¶ Affirmed.

/S/ WILLIAM E. HUNT, SR.

We Concur:

/S/ J. A. TURNAGE

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER