No. 01-072

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 308N

IN RE THE MARRIAGE OF

ROBERT W. HOLLOW,

Petitioner and Appellant,

and

CAROL C. HOLLOW,

Respondent and Respondent.

APPEAL FROM: District Court of the First Judicial District,

In and for the County of Lewis and Clark,

Honorable Thomas C. Honzel, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Mark P. Yeshe, Attorney at Law, Helena, Montana

For Respondent:

Robyn L. Weber, Weber Law Firm, Helena, Montana

Submitted on Briefs: August 23, 2001
Decided: December 31, 2001

Filed:

_____

Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c) Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2 Robert W. Hollow (Bob) appeals from the findings of fact, conclusions of law and decree of dissolution entered by the First Judicial District Court, Lewis and Clark County. We affirm.

¶3 Bob raises the following issues on appeal:

¶4 1. Did the District Court err by assigning no value to the business owned by the couple?

¶5 2. Did the District Court err by awarding Respondent, Carol C. Hollow (Carol), property brought into the marriage by Bob?

¶6 3. Did the District Court equitably distribute the marital estate?

## FACTS AND PROCEDURAL BACKGROUND

¶7 Bob and Carol were married in 1976 and separated in 1999. They have one child, who is of legal age. Bob has a bachelor of arts degree in secondary education and is currently teaching at the Riverside Girls Correctional Facility in Boulder, Montana. Carol has a high school education. At the time of the hearing, she was working at the family restaurant.

¶8 At the time of the marriage, Bob was working for Helena News, a magazine and paperback book distributorship owned by his father. Helena News was incorporated and, at the time of his marriage, Bob owned 180 of the 1000 shares of the business. In 1986, Bob and Carol purchased the remaining shares from Bob's parents. They also purchased the warehouse where the business was located. Carol worked at Helena News off and on

throughout the marriage. Bob continued to run Helena News until 1996, when it was sold for $398,000. The sale did not include the property. After paying off various debts, little was left of the proceeds. In 1997, Bob and Carol sold the property by contract for deed (Bennett Contract). The monthly payments on the contract are $1,149.66.

¶9 Bob and Carol lived together prior to their marriage in a home owned by Bob. That home was sold prior to the marriage and Bob used $2,500 from the sale as a down-payment on the purchase of 11 acres in the Helena Valley. Bob built a 700 square foot home on the property, and it became the family home. During the marriage, Bob and Carol purchased an additional nine acres and made many improvements to the home. At the time of the hearing, the property was valued at $227,500. There is a mobile home on the property which is rented for $500 a month.

¶10 In November 1995, Bob and Carol purchased a small restaurant in downtown Helena for $55,000. They renamed it "The Hollow" and opened it in December 1995. Initially, Bob and Carol worked together at the restaurant, but Bob eventually left due to disagreements over operation. The restaurant showed losses for 1996, 1997 and 1998. In May 1998, Bob and Carol listed The Hollow for sale but received no offers. At the time of the hearing, Carol was still operating the restaurant, but did not wish to continue. In their proposed findings of fact, each party proposed that the other receive the restaurant.

¶11 The couple owned various other pieces of property and had various debts, which will be discussed below as necessary.

¶12 Bob filed a petition for dissolution of marriage in July 1999. A hearing was held in May 2000. The District Court issued its findings of fact and conclusions of law in September 2000. This appeal followed.

## DISCUSSION

¶13 Did the District Court err by assigning no value to The Hollow?

¶14 The determination of property valuation is a factual issue which is within the province of the trial court to decide. When reviewing findings of fact, this Court is precluded from substituting its judgment for that of the trier of fact, and cannot set aside the findings of a court unless the findings are clearly erroneous. *In re Marriage of Meeks* (1996), 276 Mont. 237, 247-48, 915 P.2d 831, 837-38. The district court has the discretion to adopt any

reasonable valuation of property supported by the record. *Siefke v. Siefke*, 2000 MT 281, ¶ 20, 302 Mont. 167, ¶ 20, 13 P.3d 937, ¶ 20.

¶15 Bob argues that the District Court erred by allocating no value to The Hollow. Bob argues that Carol agreed that The Hollow was worth $55,000 because she listed that figure in her proposed Findings of Fact and Conclusions of Law. He relies on our decision in *In re Marriage of Simms* (1994), 264 Mont. 317, 323, 871 P.2d 899, 903, for the proposition that a district court should hold parties to their on-the-record stipulations.

¶16 In this case, there is clearly no stipulation by Carol as to the value of The Hollow. Carol testified at trial that she always disagreed with Bob's value of $55,000 and that she assigned The Hollow to him at that value in her proposed findings so that "he could either sell it or operate it or whatever he wanted." Carol also testified at trial that she no longer wanted to operate The Hollow and that the store was going deeper in debt each week. Carol's testimony did not reflect that both of the parties agreed on the value of The Hollow.

¶17 Bob also argues that there was no other competent evidence presented to controvert his value of $55,000. It is true that Carol did not give an opinion during trial on the value of The Hollow, but there was other, substantial evidence that the court relied on. Both parties testified that The Hollow lost money in 1996, 1997 and 1998. Carol offered exhibits at trial outlining the restaurant's income and expenses. Bob testified that he wanted to sell the business because "no matter how hard we worked, we couldn't make the money we needed." Both parties testified that no offers were made on the restaurant when it was listed for sale.

¶18 In its findings, the District Court stated that the only value of the restaurant would be in its equipment, and there was no good information on the value of the equipment, but "the Court doubts that the equipment is worth even close to [$55,000]." The court ultimately included restaurant equipment on the list of property that Carol should receive with a notation that the value was unknown.

¶19 We hold that the District Court's findings are not clearly erroneous and are supported by the record.

¶20 Did the District Court err by awarding Carol property brought into the marriage by Bob?

¶21 Bob argues that the District Court awarded two assets to Carol that he had significant premarital interests in: the proceeds from the Bennett Contract and the family home. He argues that Carol failed to establish that her efforts preserved these assets or caused their appreciation as required by § 40-4-202(1), MCA, and that the District Court did not make any findings that Carol's efforts had preserved these assets.

¶22 Section 40-4-202(1), MCA, provides, in relevant part,

> In a proceeding for dissolution of a marriage, . . . the court, without regard to marital misconduct, shall, . . . finally equitably apportion between the parties the property and assets belonging to either or both, however and whenever acquired and whether the title thereto is in the name of the husband or wife or both. In making apportionment, the court shall consider the duration of the marriage and prior marriage of either party; the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; . . . . In dividing property acquired prior to the marriage; . . . the court shall consider those contributions of the other spouse to the marriage, including:
>
> (a) the nonmonetary contribution of a homemaker;
>
> (b) the extent to which such contributions have facilitated the maintenance of this property; and
>
> (c) whether or not the property division serves as an alternative to maintenance arrangements.

¶23 The first piece of property that Bob argues he had a premarital interest in is the Bennett Contract. Bob argues that he owned 18 percent of the stock in Helena News at the time of the marriage. He concedes, however, that when the business was sold, all the proceeds were expended. The District Court found that Bob and Carol purchased the remaining stock in the business from Bob's parents in 1986. At that time, they also purchased the warehouse, which was owned by Bob's parents and not by the corporation. These findings are supported by substantial evidence. We conclude that Bob had no premarital interest in the warehouse, and therefore no premarital interest from the sale of the warehouse.

¶24 Next, Bob argues that he had a significant premarital interest in the family home. Bob

argues that he purchased the 11 acres and built the original small home on the property before the marriage. The District Court found that Bob used $2,500 from the sale of his previous home as a down-payment on the 11 acres and built a small home on the property prior to the marriage. During the marriage, "Bob and Carol purchased an additional nine acres adjacent to the Juniper Drive property. They also made a number of improvements to the home." The home is now valued at $227,500, with a $1,200 per month mortgage payment.

¶25 Premarital property is considered commingled with the marital estate when there is no attempt during the marriage to segregate the property. *In re Marriage of Stufft* (1997), 286 Mont. 239, 246, 950 P.2d 1373, 1377. We conclude that Bob's investment of $2,500 and his labor in building the small house prior to the marriage was commingled with marital assets. The parties were married for over 20 years and made their home on this property throughout their marriage. They added acreage and improved the home. There was no attempt to keep this property separate.

¶26 We hold that the District Court did not err in not separating this property from the marital estate.

¶27 Did the District Court equitably distribute the marital estate?

¶28 In assessing an equitable apportionment of the marital estate, this Court reviews a district court's findings of fact to determine whether the findings are clearly erroneous. We review the court's conclusions of law to determine whether they are correct. *Harper v. Harper*, 1999 MT 321, ¶ 17, 297 Mont. 290, ¶ 17, 994 P.2d 1, ¶ 17. The courts, working in equity, must seek a fair distribution of the marital property using reasonable judgment and relying on common sense. *Harper*, ¶ 17. Obtaining this equitable distribution will at times require the lower court to engage in discretionary action which cannot be accurately categorized as either a finding of fact or a conclusion of law. These discretionary judgments are presumed to be correct and will not be disturbed by this Court absent an abuse of discretion by the lower court. *Harper*, ¶ 17.

¶29 Bob argues that the District Court abused its discretion in this case. He claims that Carol was given 63 percent of the marital estate, while he received only 37 percent and that this inequality of distribution "is exacerbated by the allocation of the income producing assets."

¶30 Initially, we note that Bob's calculation of the shares he and Carol received of the marital estate is inaccurate. Bob includes in the list of marital debts apportioned to him a $5,500 debt to his mother. The District Court specifically found this was not a marital debt. Bob does not argue that this finding is clearly erroneous, and we conclude that it is supported by substantial evidence.

¶31 Additionally, Bob includes a value of $55,000 for The Hollow in his calculation of Carol's share of the marital estate. We concluded above that the District Court's finding on the value of The Hollow was not clearly erroneous.

¶32 After correcting these inaccuracies, the figures reveal that Bob received 42 percent of the marital estate, while Carol received 58 percent. An equitable distribution does not require a 50/50 distribution of the marital estate. *In re Marriage of McNellis* (1994), 267 Mont. 492, 501, 885 P.2d 412, 418. This distribution, standing alone, is not an abuse of discretion.

¶33 Bob argues that the District Court's distribution was unbalanced in terms of income flow. He argues that Carol received the family home, which includes $500 per month rental income, the proceeds from the Bennett Contract, and The Hollow. Bob claims that his proposed distribution was an equitable one and should have been adopted by the District Court.

¶34 We hold that the distribution of the marital estate in this case was equitable, and the District Court did not abuse its discretion. Bob has a college degree, is earning nearly $32,000 per year, and has several retirement plans. Carol operates The Hollow, which has never shown a profit. Even though the District Court gave no value to The Hollow, it allocated the debt on the restaurant to Carol. The court's distribution was reasonable under the circumstances of this case.

¶35 The District Court is affirmed.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ PATRICIA COTTER

/S/ JIM RICE